## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **JUSTIN SPIEHS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 5:24-CV-4005-JAR-BGS** |
| **JAY ARMBRISTER, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiff Justin Spiehs brings this action under 42 U.S.C. § 1983 against Defendants Jay Armbrister, Tyler Kruzel, Jimmy Wold, Jameson D. Shew, Shannon Portillo, Shannon Reid, Patrick Kelly, Karen Willey, Sarah Plinsky, and the Board of County Commissioners of Douglas County.[1]  Plaintiff asserts that his constitutional rights were violated at several Douglas County Commission meetings.  This matter is currently before the Court on Plaintiff's Motion to Stay (Doc. 23), which seeks to stay all proceedings pending a decision from the Supreme Court in *Gonzalez v. Trevino*.[2]  Defendants oppose the motion and have filed two separate responses in opposition.[3]  The motion is fully briefed, and the Court is prepared to rule.  For the reasons explained more fully below, the Court denies the motion.

---

[1] Defendant Willey's last name is spelled "Wiley" on the docket sheet, but she refers to herself in her briefs as "Karen Willey."  Doc. 49 at 1.  Thus, the Court adopts this spelling for the purposes of this Order.  Additionally, the docket sheet lists the County as "Douglas County, Kansas, Commissioners of," but Plaintiff filed a Second Amended Complaint renaming the County as the "Douglas County, Kansas Board of County Commissioners."  Doc. 46 at 1.  The Court directs the Clerk to rename Defendant County on the docket sheet pursuant to Plaintiff's Second Amended Complaint.  *See id.*

[2] 42 F.4th 487 (5th Cir. 2022), *cert. granted*, 144 S. Ct. 325 (Oct. 13, 2023) (mem.).

[3] Docs. 31, 33.

## I.       Background

Plaintiff filed this action on January 16, 2024, but filed a First Amended Complaint on February 29, 2024.[4]  In lieu of an answer, Armbrister filed a motion to dismiss the First Amended Complaint on March 12, 2024.[5]  The next day, Plaintiff filed the instant motion to stay, and discussed Armbrister's motion to dismiss as a factor in favor of staying the case.[6]  On March 14, 2024, Kelly, Portillo, Reid, Shew, and Willey also filed a motion to dismiss the First Amended Complaint.[7]  However, both motions to dismiss became moot when Plaintiff filed a Second Amended Complaint on April 2, 2024.[8]  The Second Amended Complaint is the operative complaint; it did not substantively alter the factual allegations presented in the First Amended Complaint.[9]

In his Second Amended Complaint, Plaintiff asserts claims against Defendants based on forum status, content- and viewpoint-discrimination, retaliation, equal protection, free speech, and the right to petition.  Plaintiff's claims arise out of events that occurred at several Douglas County Commission ("County Commission") meetings.  On two separate occasions, Plaintiff was prevented from entering County Commission meetings because he was not wearing a mask during an active mask mandate.  On two other occasions, Plaintiff was removed from Douglas County Commission meetings by Sheriff's deputies.

The first time Plaintiff was removed from a meeting was on April 20, 2022.  Plaintiff attended the meeting with a sign that stated, "Dr. Spiehs for DGCO Commissioner Fuck These

---

[4] Doc. 17.

[5] Doc. 19.

[6] Doc. 23.

[7] Doc. 25.

[8] Doc. 46; *see also* Doc. 53.

[9] *See* Docs. 17, 46.

Liberal Motherfuckers."[10]  Armbrister asked Plaintiff to remove the sign from the meeting room, and Plaintiff refused.  Before the meeting started, Plaintiff argued with one of the other members of the public, Michael Almon, and yelled, "I don't give a fuck what you think of me."[11] Armbrister, Kruzel, and another deputy forcibly removed Plaintiff from the meeting and arrested him for disorderly conduct.  The Douglas County Prosecutor charged Plaintiff with disorderly conduct, but the charge was dropped.

The second time Plaintiff was removed from a County Commission meeting was on May 11, 2022.  Plaintiff attended the meeting with a sign stating, "Dr. Spiehs for DGCO Commissioner Fuck These Child Abusing Motherfuckers."[12]  When it was Plaintiff's turn to offer public comment, he stated, "[e]vening, they's (sic); evening, beta male.  I'd like to start off with a quote by Einstein: the thing about smart motherfuckers is that they sound like crazy motherfuckers to stupid motherfuckers."[13]  Reid instructed Plinsky to turn off Plaintiff's microphone.  When Plaintiff objected, Reid instructed the deputies to remove Plaintiff.  Plaintiff was not charged or arrested based on these events.

Another member of the public, Michael Eravi, is a vocal participant at County Commission meetings.  At the August 10, 2022 meeting, Eravi offered public comment about free speech, declaring that certain curse words are protected under the First Amendment.  At the August 24, 2022 meeting, Eravi interrupted Reid, Plinsky, and several members of the public, while each was speaking.  Eravi also offered his own public comment that day, and continued to

---

[10] Doc. 46 ¶ 67.

[11] *Id.* ¶ 126.

[12] *Id.* ¶ 150.

[13] *Id.* ¶ 152.

speak after the time limit expired.  Reid warned Eravi several times not to disrupt the meeting and warned him that he was subject to removal, but Eravi left the room on his own.

## II.    Standard

"The power to stay proceedings is incidental to the Court's inherent power 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"[14]  Courts have discretion in deciding whether to grant a motion to stay proceedings.[15]  "When exercising its discretion to stay proceedings, the trial court must weigh competing interests."[16]  However, a stay of litigation is an exceptional remedy and must be kept within the "bounds of moderation."[17]  "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."[18]

## III.    Discussion

Plaintiff asserts that the Supreme Court's resolution of *Gonzalez v. Trevino*[19] will be dispositive of a central issue in this case, and that a stay would not prejudice Defendants. Defendants respond that they are invoking qualified immunity and improper service defenses, which can and should be decided without reference to the pending *Gonzalez* decision. Defendants also argue that *Gonzalez* touches on only a collateral issue in this case.  Below, the Court first summarizes the relevant cases, and then finds that a stay is not warranted because the

---

[14] *Klaver Constr. Co. v. Kan. Dep't of Transp.*, No. 99-2510, 2001 WL 1000679, at *2 (D. Kan. Aug. 23, 2001) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

[15] *See id.* (citations omitted).

[16] *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, Nos. 08-1330 & 12-1215, 2015 WL 790129, at *1 (D. Kan. Feb. 25, 2015) (citing *Landis*, 299 U.S. at 254–55).

[17] *Landis*, 299 U.S. at 256.

[18] *Id.* at 255.

[19] 42 F.4th 487 (5th Cir. 2022), *cert. granted*, 144 S. Ct. 325 (Oct. 13, 2023) (mem.).

issues in *Gonzalez* are not central to Plaintiff's case, and because the balance of interests does not weigh in favor of a stay.  Thus, the Court denies Plaintiff's motion to stay proceedings.

### A.      Relevant Case Law

The Fifth Circuit based its decision in *Gonzalez* on the Supreme Court's decision in *Nieves v. Bartlett*,[20] which is the current controlling precedent.  In *Nieves*, the Supreme Court set forth the general rule that a plaintiff asserting a retaliatory arrest claim based on protected speech "must plead and prove the absence of probable cause for the arrest."[21]  The Supreme Court adopted the no-probable-cause rule because it found that retaliatory arrest claims pose causal complexities.[22]  Namely, proving that a plaintiff was arrested because of an "officer's malice" instead of "the plaintiff's potentially criminal conduct" is difficult because "protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest."[23]  Thus, retaliatory arrest claims require proof not only that an officer arrested a plaintiff because of the plaintiff's speech, but also that there was no probable cause for the arrest.[24]

However, the Supreme Court carved-out an exception to the rule for cases "where officers have probable cause to make arrests, but typically exercise their discretion not to do so."[25]  The Supreme Court explained that the no-probable-cause rule, in those types of cases, "could pose 'a risk that some police officers may exploit the arrest power as a means of suppressing speech.'"[26]  To illustrate the purpose of the exception, the Supreme Court gave the

---

[20] 139 S. Ct. 1715 (2019).

[21] *Id.* at 1724.

[22] *Id.* at 1724–25.

[23] *Id.* at 1724 (quoting *Reichle v. Howards*, 566 U.S. 659, 668 (2012)).

[24] *Id.*

[25] *Id.* at 1727.

[26] *Id.* (quoting *Lozman v. City of Riviera Beach*, 585 U.S. 87, 99 (2018)).

example of jaywalking, which is "endemic but rarely results in arrest."[27]  The Court explained

that, if an individual was arrested for jaywalking, and that individual happened to be a vocal

opponent of police officers, the individual's retaliatory arrest claim should not be dismissed just

because there was probable cause.[28]  Instead, the Supreme Court held that "the no-probable-

cause requirement should not apply when a plaintiff presents objective evidence that he was

arrested when otherwise similarly situated individuals *not* engaged in the same sort of protected

speech had not been."[29]

     In *Gonzalez*, the Fifth Circuit applied the *Nieves* rule by finding that the plaintiff failed to

establish a retaliatory arrest claim because she conceded that there was probable cause for her

arrest.[30]  The plaintiff, Gonzalez, was a member of the city council in Castle Hills, Texas.[31]

Gonzalez organized a non-binding petition calling for the removal of the City Manager, which a

resident submitted to the city council at a meeting.[32]  Gonzalez placed the petition in her binder

at some point during the meeting.[33]  After the meeting ended, the defendant, Mayor Trevino,

"asked Gonzalez to look for the petition in her binder, and, to her alleged surprise, she found the

petition there."[34]  Trevino then told the chief-of-police that he wanted to file a criminal complaint

against Gonzalez "alleging that Gonzalez took the petition without consent."[35]  An officer

eventually obtained a warrant against Gonzalez, which was "atypical, as he: (1) chose to secure a

---

[27] *Id.*

[28] *See id.*

[29] *Id.* (emphasis added) (citation omitted).

[30] *Gonzalez v. Trevino*, 42 F.4th 487, 492 (5th Cir. 2022).

[31] *Id.* at 489.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

warrant, rather than a summons, for a nonviolent crime, and (2) circumvented the district attorney by walking the warrant directly to the magistrate."[36]  Gonzalez was charged with a misdemeanor violation of Texas Penal Code § 37.10(a)(3) and (c)(1) for intentionally concealing or removing a government record.[37]  In the warrant for Gonzalez's arrest, the underlying affidavit explicitly included statements about her antagonism to the City Manager.[38]

Gonzalez sued Trevino, and others, asserting claims under § 1983 "on the grounds that she was arrested in retaliation for her protected speech."[39]  The Western District of Texas denied the defendants' motion to dismiss on qualified immunity grounds because it found that probable cause for Gonzalez's arrest did not bar her claims.[40]  The Fifth Circuit reversed, holding that Gonzalez could not take advantage of the *Nieves* exception because she did "not offer evidence of other similarly situated individuals who mishandled a government petition but were not prosecuted under Texas Penal Code § 37.10(a)(3)."[41]  Instead, Gonzalez had argued that there was no evidence of a similar prosecution under § 37.10(a)(3), and that "because no one else has been prosecuted for similar conduct, her arrest must have been motivated by her speech."[42]  The Fifth Circuit declined to consider this evidence, finding that the *Nieves* exception applied only if a plaintiff offered "comparative evidence" of similarly situated individuals who had engaged in the same criminal conduct but were not arrested.[43]  The Fifth Circuit noted that other circuit

---

[36] *Id.* at 489–90.

[37] *Id.* at 489.

[38] *Id.* at 490.

[39] *Id.* at 491.

[40] *Id.* at 490.

[41] *Id.* at 492.

[42] *Id.*

[43] *Id.* at 493.

courts interpreted the *Nieves* exception more broadly, and that if it were "writing on a blank slate," it may have come to a different conclusion.[44]

The Supreme Court granted certiorari to resolve (1) whether the *Nieves* exception can be proven with objective evidence other than specific, comparative examples of non-arrests; and (2) whether the *Nieves* no-probable-cause rule applies to all arrests, or only to individual claims against arresting officers for split-second arrests.[45]

### B.    Application to this Case

Plaintiff argues that both of the issues certified by the Supreme Court in *Gonzalez* are central to his case.[46]  Plaintiff asserts that his retaliatory arrest claim should not be barred even if there was probable cause to arrest him, and that *Gonzalez* will be "potentially dispositive"[47] of his case.

Plaintiff's facts are easily distinguishable from *Gonzalez*.  The issue in *Gonzalez* was that there was ample, objective evidence of retaliatory motive which the Fifth Circuit did not consider, because it was not comparative evidence.[48]  Here, however, Plaintiff alleges comparative evidence in his Second Amended Complaint by pointing to two other public speakers who were not arrested for similar behavior—Alman and Eravi.  If Plaintiff

---

[44] *Id.* at 494.

[45] *See* Petition for Writ of Certiorari, *Gonzalez v. Trevino*, No. 22-1025, 2023 WL 3075683, at *1 (U.S. Apr. 20, 2023).

[46] Plaintiff also asserts that the Supreme Court will address qualified immunity, but the only question before the Fifth Circuit was whether Gonzalez "alleged a violation of her constitutional rights."  *Gonzalez*, 42 F.4th at 491.  The Fifth Circuit based its holding purely on the *Nieves* rule, finding that Gonzalez could not make out a violation of her constitutional rights because there was probable cause to arrest her.  *Id.* at 492.  The Fifth Circuit did not consider, nor will the Supreme Court, whether the individual actions taken by each defendant violated Gonzalez's rights.  Thus, qualified immunity is not squarely before the Supreme Court because the question is whether the no-probable-cause rule precludes Gonzalez's claim, not whether the individual defendants are entitled to qualified immunity.

[47] Doc. 23 at 10.

[48] *Gonzalez*, 42 F.4th at 492–94.

demonstrates that those comparators are sufficiently similar, this case would fall within the *Nieves* exception.  And the distinction between split-second arrests and planned arrests played no role in the Fifth Circuit's holding;[49] rather, the dissent pointed out that distinction with the hope of crafting different rules for each type of arrest.[50]  Regardless, Plaintiff's arrest is distinguishable from Gonzalez's arrest because Plaintiff was arrested immediately after the alleged disorderly conduct, whereas Gonzalez's arrest took place days after the allegedly criminal conduct.  Thus, Plaintiff has not shown that his case is sufficiently similar to *Gonzalez*, such that the decision in *Gonzalez* will impact the Court's disposition of his claims.

Additionally, Plaintiff's retaliatory arrest claim is one of many claims in his Second Amended Complaint.  Plaintiff also raises claims based on forum status, content- and viewpoint-discrimination, equal protection, and various free speech/petition clause claims.  Even in the retaliation section of Plaintiff's Second Amended Complaint, he focuses his argument not on a retaliatory arrest claim, but on a *Monell*[51] claim about a retaliatory policy to silence him. Plaintiff argues that several events described in the Second Amended Complaint constitute retaliatory "silencing" of his speech—such as turning off his microphone, preventing him from entering the meetings, removing him from meetings, and arresting him.  In contrast to a retaliatory arrest claim, "probable cause does not . . . bar a plaintiff from suing [a] municipality" for "an alleged 'official municipal policy' of retaliation."[52]  Thus, Plaintiff's retaliatory arrest

---

[49] *See id.* at 493–94 (explaining why Gonzalez's argument that her arrest was not "split-second" was irrelevant).

[50] *See id.* at 503–05 (Oldham, J., dissenting).

[51] *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[52] *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Lozman v. City of Riviera Beach*, 585 U.S. 87, 99 (2018)).

claim is not central to his broader retaliation claim.  Nor is it central to, or dispositive of, any other claim Plaintiff raises.

Plaintiff asserts that his pleading and Armbrister's now-moot motion to dismiss relied heavily on *Nieves*.  But Plaintiff mentions the word "comparators" once in his 83-page Second Amended Complaint, and he refers to it in the equal protection section by asserting that similarly situated people were treated differently than he was.  And Plaintiff's characterization of Armbrister's now-moot motion to dismiss is plainly inaccurate.  Plaintiff states, "[t]he defendant Sheriff contends that Dr. Spiehs must provide the Court examples of arrests that never happened.  And then argues that the comparisons made are not sufficient."[53]  But Armbrister did not argue that Plaintiff needed to provide examples of arrests that never happened.  In fact, Armbrister never mentioned comparative evidence in moving to dismiss Plaintiff's retaliation claim, nor did he mention the presence or absence of probable cause for Plaintiff's arrest.  Armbrister mentioned comparators only twice in his motion to dismiss, in the equal protection claim section.  Plaintiff is simply exaggerating the centrality of *Nieves*, both to his claims and to the defenses he anticipates from Defendants.

In sum, Plaintiff's motion to stay asserts that *Nieves* is central to his case, but Plaintiff did not support this centrality in his Second Amended Complaint.  Additionally, the retaliatory arrest claim is one subset of a broader retaliation claim, which is one of six causes of action Plaintiff asserts against Defendants.  Though *Nieves* is relevant to Plaintiff's case, there is no indication that the Supreme Court's decision in *Gonzalez* would be dispositive of Plaintiff's retaliation

---

[53] Doc. 23 at 3.  Plaintiff also states that "defendant Armbrister's argument tracks the 5th Circuit: rigidly limiting the universe of 'objective evidence' upon which Dr. Spiehs may rely in order to take advantage of *Nieve's* carve-out to the no-probable-cause rule."  *Id.* at 6.  Again, this argument appears nowhere in Armbrister's motion to dismiss.  *See* Doc. 19.

claims—let alone his myriad additional claims.  Thus, Plaintiff's interests do not weigh in favor of a stay.

In contrast, Defendants have a strong interest in proceeding with the litigation because each individual Defendant plans to assert the defense of qualified immunity.  In deciding a motion to dismiss based on qualified immunity, the Court will take the factual allegations in the Second Amended Complaint as true.[54]  And the evaluation of whether Plaintiff alleged a violation of a constitutional right, and whether the law was clearly established, will be based on the law at the time of the alleged injury.[55]  Thus, the Court may decide whether Defendants are entitled to qualified immunity without any reference to the pending *Gonzalez* decision.  Defendants' interest in litigating claims raised against them in a timely manner also weighs against a stay.

Moreover, the Court's interest in judicial efficiency would be best served by proceeding with this litigation.  Since the *Gonzalez* issues are not central to this case, a stay would not save the Court time or energy, or otherwise conserve judicial resources.  In sum, a stay is not warranted because Defendants' strong interest in timely litigating this suit and the Court's interest in judicial efficiency outweigh Plaintiff's minimal interest in resolving a collateral issue to one of his claims.  Therefore, the Court denies Plaintiff's motion to stay proceedings pending the Supreme Court's decision in *Gonzalez*.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion to Stay (Doc. 23) is **denied**.

---

[54] *See Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021).

[55] *See Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) ("Once the qualified immunity defense is asserted, the plaintiff 'bears a heavy two-part burden' to show, first, 'the defendant's actions violated a constitutional or statutory right,' and, second, that the right was 'clearly established at the time of the conduct at issue.'" (quoting *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008))).

**IT IS FURTHER ORDERED BY THE COURT** that the Clerk shall rename the County on the docket sheet according to Plaintiff's Second Amended Complaint, as the "Douglas County, Kansas Board of County Commissioners."

**IT IS SO ORDERED.**

Dated: April 17, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE