IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JUSTIN SPIEHS,

       Plaintiff,

       v.                                                              Case No. 24-4005-JAR-BGS

JAY ARMBRISTER, et al.,

       Defendants.

## MEMORANDUM AND ORDER

Plaintiff Justin Spiehs brings this action under 42 U.S.C. § 1983 against the Douglas County, Kansas Board of County Commissioners;[1] individual members of the Commission; and individual Douglas County officers. Plaintiff specifically names as defendants County Commissioners Shannon Portillo, Shannon Reid, Patrick Kelly, Karen Willey,[2] and County Administrator Sarah Plinsky ("Commission Defendants"). Plaintiff also names as defendants Sheriff Jay Armbrister, Lieutenant Kristen Channel,[3] Deputy Tyler Kruzel, Deputy Jimmy Wold, and Deputy Chase Coleman ("Officer Defendants"). Plaintiff asserts claims challenging the Commission's public-comment policies and their enforcement against him. Plaintiff also asserts claims challenging his arrest at two Commission meetings. This matter is currently before the Court on the County and Commissioner Defendants' Motion to Dismiss (Doc. 91) for failure to

---

[1] Throughout his Third Amended Complaint, Plaintiff distinguishes between the Board of County Commissioners as the collective group of individual Commissioners and the Board of County Commissioners as the local governmental unit he attempts to sue. *See, e.g.*, Doc. 81 ¶ ("The Douglas County Commissioners (Commissioners) is a policymaking entity for Douglas County, Kansas . . . . The Commissioners are a separate legal entity from Douglas County, Kansas."). Under K.S.A. & 19-105, Douglas County is properly named the Board of County Commissioners of the County of Douglas, Kansas. To avoid confusion, the Court will use "the Commission" to refer to the Board of County Commissioners as the collective group of individual Commissioners and "Douglas County" to refer to the Board of County Commissioners as the defendant local governmental unit.

[2] Plaintiff misspells Willey as Wiley.

[3] Plaintiff misspells Channel as Channels.

state a claim and the Officer Defendants' Motion to Dismiss (Doc. 94) for failure to state a claim. The motions are fully briefed, and the Court is prepared to rule. For the reasons explained more fully below, the Court grants in part and denies in part both motions to dismiss.

## I.      Legal Standard

All Defendants move to dismiss under Fed R. Civ. P. 12(b)(6). To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[4] and must include "enough facts to state a claim for relief that is plausible on its face."[5] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[7] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[8] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[9]

The Supreme Court has explained the analysis as a two-step process. For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but

---

[4] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[5] *Id*. at 570.

[6] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[8] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[9] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[10]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[11]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[12]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[13]

When ruling on a motion to dismiss, if "a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'"[14]  There are three exceptions to this rule: (1) documents that the complaint incorporates by reference,[15] (2) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity,"[16] and (3) "matters of which a court may take judicial notice."[17]

In his response brief, Plaintiff invites the Court to view various materials outside the pleadings.[18]  First, he offers Youtube and Dropbox links to videos of his 2022 and 2024 arrests. Second, he relies on allegations in the Second Amended Complaint ("SAC"), which he did not

---

[10] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[11] *Id.* at 678–79.

[12] *Id.* at 679.

[13] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[14] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Alexander v. Okla.*, 382 F.3d 1206, 1214 (10th Cir. 2004)).

[15] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[16] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[17] *Tellabs*, 551 U.S. at 322.

[18] Doc. 101 at 2.

incorporate into the Third Amended Complaint ("TAC").[19]  The Court will not consider these materials.  Plaintiff fails to explain how the Court should rely on these materials, other than to say that the Court should accept his allegations as true "while taking into account the considered video footage."[20]  And the part of the SAC Plaintiff cites does not do what Plaintiff says it does: it does not identify Defendants Armbrister, Kruzel, or Wold by name.  Thus, the citation would not help Plaintiff overcome Defendant's argument that he failed to allege specific actions by specific Defendants.  Because it would be fruitless to do so, the Court declines to consider these extra-pleading matters.

## II.    Background

The following facts are alleged in the TAC.  For the purposes of deciding this motion, the Court assumes these facts to be true.

### A.  The Public-Comment Policies

The Commission hosts regular meetings to transact business.  It is a five-member board, but only three of its current members are defendants here: Defendants Reid, Kelly, and Willey.  Portillo previously served on the Commission, but Willey replaced her in September 2022.  County Administrator Plinsky assists the Board during meetings.  At its regular meetings, the Commission opens the floor for a public-comment period, and to keep order during that period, the Commission adopted public-comment policies, which comprise three components: (1) a germaneness requirement, (2) a decorum requirement, and (3) a prohibition on campaigning.[21]  The germaneness requirement requires that public comments be "related to the general business

---

[19] *See* Fed. R. Civ. P. 10(c).

[20] *Id.* at 3.

[21] These various components solidified over several years and went through different formulations.  The Court provides the specific iteration where relevant.

of the Douglas County Commission."[22]  The decorum requirement's most recent formulation prohibits "threatening, aggressively hostile, or belligerent, fighting words, slander, or speech that invades the privacy of individuals, unreasonably loud, disruptive, or repetitive, or that interrupt or substantially interfere with the board's ability to conduct county business."[23]  Finally, the campaigning prohibition prohibits using the comment period for "campaigning for public office."[24]  To enforce those policies, the Board "reserve[d] the right to mute or remove any speaker who violate[d] these public comment rules."[25]

### B.  Plaintiff's Attendance at Meetings

Plaintiff attends many Commission meetings.  The Court recounts only those meetings where he alleges that he was either muted or removed on the basis of his speech and addresses other meetings when relevant to the motion.

Plaintiff attended the April 20, 2022 meeting, arriving before the meeting started.  He carried a sign that said "Dr. Spiehs for DGCO Commissioner Fuck These Liberal Motherfuckers."[26]  Defendant Armbrister ordered Plaintiff to remove the sign from the meeting room.  Eventually, another attendee—Michael Almon—criticized Plaintiff and his sign, and Plaintiff turned to address Almon.  They exchanged words; Plaintiff used "earthy and perhaps repugnant words" in response to Almon's comments.  But both Almon and Plaintiff remained calm, and Plaintiff did not react in any intimidating, disrespectful, or otherwise aggressive manner.  While Plaintiff sat peacefully, Armbrister approached him and ordered him to leave the

---

[22] Doc. 81 ¶ 204.

[23] *Id.* ¶ 269.

[24] *Id.* ¶ 18.

[25] *Id.* ¶ 269.

[26] *Id.* ¶ 39.

meeting room.  Kruzel grabbed Plaintiff's sign and assisted with removing Plaintiff.  Once in the hallways, Defendant Armbrister arrested Plaintiff.  He was taken to the police station and booked.

Kruzel filed an incident report, which included false information describing the arrest and also excluded exculpatory information.  The report formed part of the evidence presented to the prosecutor and magistrate to justify Plaintiff's arrest and disorderly conduct charge.  Plaintiff was charged with a Class C Misdemeanor; a violation of the disorderly-conduct statute, K.S.A. § 21-6203(a)(3).  The prosecutor later dismissed the charge.

Plaintiff also attended the May 11, 2022 meeting.  He carried a sign that said "Dr. Spiehs for DGCO Commissioner Fuck These Child Abusing Motherfuckers."[27]  During the public-comment period, Plaintiff stood and said: "Evening, they's; evening, beta male.  I'd like to start off with a quote by Einstein: the thing about smart motherfuckers is that they sound like crazy motherfuckers to stupid motherfuckers."[28]  Reid instructed that the microphone be turned off, and Plinsky turned it off.  Reid explained that Plaintiff violated the decorum requirement by "direct[ing] derogatory language" at the Commissioners and using "vulgar language."[29]  Three unnamed deputies removed Plaintiff from the meeting.

At the April 17, 2024 meeting, Plaintiff carried a sign that said "Patrick Kelly is a giant pussy."[30]  Plaintiff used the public-comment period to discuss "a Commissioner's character."[31]  Reid instructed Plinsky to mute Plaintiff's microphone because he violated the germaneness and

---

[27] *Id.* ¶ 69.

[28] *Id.* ¶ 71.

[29] *Id.* ¶ 73.

[30] *Id.* ¶ 90.

[31] *Id.* ¶ 94.

decorum requirements by speaking about topics not "specific to the county commission" and by attacking Kelly's character.

Plaintiff attended the May 1, 2024 meeting. He carried a sign that said "Women have more balls than Patrick too."[32]  Because the meeting room had no sitting room, Plaintiff stood at the front of the audience section. He did not block anyone's view or obstruct passage around the meeting room. When Plaintiff began to speak during the public-comment period, Willey told him that his sign was not allowed and instructed Defendant Plinsky to remove Plaintiff from the meeting. When the public-comment period ended, Plaintiff remained standing at the front of the room; still, he obstructed no one's view or passage throughout the room. Defendants Channel and Coleman, both deputy sheriffs, arrived, and Willey asked them to move Plaintiff away from the front of the room and toward a wall because he was standing in "a traffic way for folks that may be leaving the room after their public comment."[33]  Even so, Plaintiff was not standing in a spot that obstructed pedestrian traffic. Channel and Coleman eventually removed Plaintiff from the room.

At some point, Plaintiff was arrested for violating K.S.A. § 21-5922, which prohibits interfering with the conduct of public business. The prosecutor declined to prosecute the charge.

## III.  Discussion

### A.  Individual-Capacity Claims—Qualified Immunity

Plaintiff brings several individual-capacity claims. The following are alleged against all individual defendants: right to petition (Claim I), free-speech discrimination (Claim II), free-speech retaliation (Claim III), and class-of-one equal protection (Claim IV). The individual-

---

[32] *Id.* ¶ 266.

[33] *Id.* ¶ 276.

capacity claim for unconstitutional conditions (Claim VII) is only against the Commission

Defendants.[34]  The following claims are against the Officer Defendants: free-speech retaliatory

arrest (Claim VIII), Fourth Amendment violation (Claim IX), and malicious prosecution (Claim

X).

Defendants argue that qualified immunity shields each of them from individual liability

on all § 1983 claims asserted against them. [35]  The doctrine of qualified immunity "protects

government officials from suit for civil damages if their conduct does not violate clearly

established statutory or constitutional rights."[36]  "Although qualified immunity defenses are

typically resolved at the summary judgment stage, district courts may grant motions to dismiss

on the basis of qualified immunity."[37]  "Asserting a qualified immunity defense via a Rule

12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than

would apply on summary judgment."[38]  At the motion to dismiss stage, "it is the defendant's

---

[34] Although Plaintiff labels his unconstitutional-conditions claim as a claim under the Free Exercise Clause, he makes no allegations regarding his religious practices.  Instead, the claim is predicated on his free-speech right. Because Plaintiff need not plead a specific legal theory, but only facts that plausibly give rise to a claim, the particular label Plaintiff gives to this claim is not dispositive on a Rule 12(b)(6) motion.  *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (concluding that to state a claim, plaintiff must only "inform[] the [defendant] of the factual basis for their complaint"); 5 Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, Federal Practice and Procedure § 1219 (4th ed. 2021) ("[I]t is unnecessary to set out a legal theory for the plaintiff's claim for relief.").  So the Court considers whether this claim fails to state a claim under the unconstitutional-conditions doctrine under the First Amendment's free-speech component.

[35] Both groups of Defendants argue that Plaintiff's TAC fails to give fair notice of the claims against them because it generally relies on collective allegations about "the defendants" and does not allege "exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n.10).  Because the Court finds that even if Plaintiff's allegations provided fair notice, the individual Defendants are entitled to qualified immunity on most claims, the Court addresses the fair-notice argument only when the Court concludes that an individual Defendant is not entitled to qualified immunity.

[36] *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016); *see also Ziglar v. Abbasi*, 582 U.S. 120, 150–51 (2017) ("The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'" (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011))).

[37] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

[38] *Id.* (quoting *Peterson v. Jensen*, 371 U.S. 1199, 1201 (10th Cir. 2004)).

conduct *as alleged in the complaint* that is scrutinized for objective legal reasonableness."[39]  The court considers: "(1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct."[40]

Once the defense of qualified immunity is adequately raised, the plaintiff bears the burden to show that the defendant is not entitled to qualified immunity.[41]  The court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[42]  "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity."[43]

### (1) Equal Protection (Claim IV) Against All Individual Defendants

Plaintiff brings a class-of-one equal protection claim.  Plaintiff fails to overcome the individual Defendants' invocation of qualified immunity because he fails to allege facts that "make out a violation of a constitutional right."[44]  An equal protection claim ordinarily challenges "governmental action that disproportionally burdens certain classes of citizens."[45]  In *Village of Willowbrook v. Olech*, however, the Supreme Court carved out a "class-of-one" equal protection claim, holding that a plaintiff may state such a claim by alleging that he "has been

---

[39] *Id.* (internal quotation marks omitted) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

[40] *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

[41] *Thomas*, 765 F.3d at 1194.

[42] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[43] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

[44] *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (internal quotation marks omitted) (quoting *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013)).

[45] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215–16 (10th Cir. 2011).

treated differently from others similarly situated and that there is no rational basis for the difference in treatment."[46]  Plaintiff faces a heavy burden, though, because he must allege that others "'similarly situated in *every material respect*[,]' were treated differently."[47]

To show that similarly situated individuals were treated differently, Plaintiff uses three other individuals as a comparators: Michael Eravi, Michael Almon, and an unidentified speaker. He alleges that these other individuals were treated differently because, unlike him, they were not muted or removed from the meetings for using foul language.  But he fails to allege that the comparators were similar in every material respect.

The unidentified speaker made a passing comment about Willey's demeanor, which is not similar to Plaintiff's speech—for example, "Fuck These Child Abusing Motherfuckers"—in every material aspect.  As for Eravi, Plaintiff alleges first that at an August 10 meeting Eravi used a string of curse words at a meeting but that Eravi was allowed to finish his comments and was not arrested or otherwise asked to leave.  But Eravi's speech was materially different than Plaintiff's: Eravi's speech on August 10 did not direct vulgar insults at the Commission; Plaintiff's did.  Plaintiff and his sign said "Fuck These Liberal Motherfuckers," in apparent reference to the Commissioners, and "Fuck These Child Abusing Motherfuckers," again in apparent reference to the Commissioners.  Second, Plaintiff alleges that at an April 24, 2024 meeting when Eravi used language similar to Plaintiff's—"Patrick Kelly is a pussy"—his microphone was muted.  But just as Eravi's microphone was muted so too was Plaintiff's when he said that same phrase.  Because Eravi used different language than Plaintiff, he was not

---

[46] 528 U.S. 562 (2000) (per curiam).

[47] *A.M. v. Holmes*, 830 F.3d 1123, 1167 (10th Cir. 2016) (quoting *Kan. Penn Gaming*, 656 F.3d at 1216).

similarly situated to Plaintiff in every material respect.  And even if similarly-situated, they were not treated differently.

Looking next to Almon, Plaintiff has again failed to allege the similarity required for a class-of-one claim.  Plaintiff alleges that Almon engaged in a "dialogue" and "disagreement" with Plaintiff prior to the beginning of a Commission meeting, but that officers removed Plaintiff—but not Almon—from the meeting.  Plaintiff's speech again differed from Almon's because Almon used "derisory names about [Plaintiff]" but otherwise "did not appear angry or upset";[48] Plaintiff's sign, however, used what he calls "earthy and perhaps repugnant"[49] speech: "Fuck These Liberal Motherfuckers."  Again, Almon's speech was materially different than Plaintiff's hostile and personal insults against the Commissioners.

But even if Plaintiff had alleged material similarity to the comparators, he also fails to allege that no rational basis existed for the different treatment.[50]  Defendants have a legitimate interest in conducting orderly meetings, and muting certain speakers whose speech is abusive furthers that interest.[51]

Plaintiff has failed to plausibly allege both that he was similarly situated in all material respects to others who were treated differently and that no rational basis existed for the different treatment, so he fails to state an equal protection claim.  The Court therefore dismisses it.

---

[48] Doc. 81 ¶¶ 52–54.

[49] *Id.* ¶ 55.

[50] *See Van Sant & Co. v. Town of Calhan*, 83 F.4th 1254, 1279 (10th Cir. 2023) (placing burden on the party challenging differential treatment to show absence of rational basis).

[51] *See Scroggins v. City of Topeka*, 2 F. Supp. 2d 1362, 1372 (D. Kan. 1998) (collecting cases).

### (2) First Amendment Claims

### (a.) Free-Speech and Right-to-Petition Claims (Claims I and II)

The individual Defendants are entitled to qualified immunity on the free-speech and right-to-petition claims because Plaintiff fails to allege a constitutional violation of clearly established law.  Because the right-to-petition claim is premised on the same speech conduct as the free-speech claim, the analysis for each claim is identical, and the Court address both under the same rubric.[52]  The Court first explains the standard for a First Amendment challenge and then the standard for qualified immunity's clearly-established prong.

To analyze a First Amendment challenge, courts follow three-steps: (1) determining whether the speech in question is protected; (2) identifying the status of the forum "because that determination dictates the extent to which the government can restrict First Amendment activities"; and (3) determining "whether the proffered justifications for prohibiting speech in the forum satisfy the requisite standard of review."[53]  Here, the parties do not meaningfully contend that Plaintiff's speech fell into a category of unprotected speech.  Instead, they dispute the second and third steps of the analysis: the status of the forum and the appropriate standard of review.  Plaintiff alleges that the Commission meetings are designated public forums.[54]  Defendants argue that they are limited public forums.

---

[52] *See Wayte v. United States*, 470 U.S. 598, 611 n.11 (1985) ("Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis."); *Schalk v. Gallemore*, 906 F.2d 491, 498 (10th Cir. 1990) (concluding that where a plaintiff's "right to petition is inseparable from her right to speak," the claims are "susceptible to the same disposition").

[53] *Verlo v. Martinez*, 820 F.3d 1113, 1128 (10th Cir. 2016) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)).

[54] Plaintiff's TAC and response brief waiver between calling the meetings a traditional public forum, a designated public forum, and simply a public forum.  Nevertheless, much of his response brief is devoted to discussing the standard of review "applicable to designated public forums," so the Court understands Plaintiff to allege that the County Commission meetings are designated public forums.

"The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."[55]  The Supreme Court has identified three categories of forums: (1) traditional public forums; (2) designated public forums; and (3) nonpublic forums.[56]  Traditional public forums are places which "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."[57]  In traditional public forums, like parks and streets, the government's rights to restrict expressive activity "are sharply circumscribed" and must satisfy strict scrutiny.[58]

Designated public forums are "created when the government 'intentionally open[s] a nontraditional public forum for public discourse.'"[59]  Infringement on speech at a designated public forum is subject to the same strict scrutiny as traditional public forums.[60]  If a property is "generally available to a certain class of speakers," courts have found a designated public forum to exist.[61]  In contrast, a non-public forum is "[p]ublic property which is not by tradition or designation a forum for public communication."[62]  "Control over access to a nonpublic forum

---

[55] *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).

[56] *Id.* at 45–46.

[57] *Id.* at 45 (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)).

[58] *Id.*

[59] *Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007) (quoting *Ark. Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998)).

[60] *Id.*

[61] *Forbes*, 523 U.S. at 679.

[62] *Perry*, 460 U.S. at 46.

can be based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral."[63]

Relevant here, there is a sub-category of the nonpublic forum called a "limited public forum," which "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum."[64]  If the government restricts speech in a limited public forum, the restriction "must only be reasonable in light of the purpose served by the forum and be viewpoint-neutral."[65]  So here, the parties' dispute hinges on the forum's status: if the forum was a limited public forum, then the public-comment policies need only be (1) viewpoint neutral and (2) reasonable in light of the meetings' purpose.  But if the forum was a designated public forum, then the public-comment policies must either have been valid content-neutral restrictions or, if content-based, survive strict scrutiny.

To overcome qualified immunity, Plaintiff must also show that the public-comment policies violated clearly established law.  To determine whether law is clearly established, the Court asks if "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."[66]  "'General statements of the law are not inherently incapable of giving fair and clear warning' to officers, but 'in the light of pre-existing law the unlawfulness must be apparent.'"[67]  The Tenth Circuit requires the following before declaring a

---

[63] *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (citing *Perry*, 460 U.S. at 49)).

[64] *Shero*, 510 F.3d at 1202 (quoting *Summum v. City of Ogden*, 297 F.3d 995, 1002 n.4 (10th Cir. 2002)).

[65] *Id.* at 1202–03 (citing *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

[66] *Mecham v. Frazier*, 500 F.3d 1200, 1205–06 (10th Cir. 2007) (internal quotation marks omitted) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)).

[67] *White v. Pauly*, 580 U.S. 73, 79–80 (2017) (citation omitted) (first quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997); and then quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

law to be clearly established: (1) "a Supreme Court or Tenth Circuit decision on point," or (2) a showing that "the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains."[68]

Plaintiff contends that the individual defendants violated clearly established law by enforcing the public-comment policies, which, he argues, are viewpoint-based restrictions under clearly established law.[69]  Though Plaintiff's argument on the clearly-established prong is far from clear, the Court construes it as arguing that the policies are viewpoint discriminatory and, in the alternative, are content based.  If Plaintiff is correct, then the public-comment policies fail even if the meetings were limited public forums because restrictions in a limited public forum must be viewpoint neutral.  Plaintiff argues that the prohibition on campaigning and the decorum requirement are viewpoint based under clearly established law.[70]  But even assuming that the public-comment policies are viewpoint-based restrictions, Plaintiff does not show that the proposition is clearly established.  He points to no on-point Supreme Court or Tenth Circuit authority.  In fact, he points to no authority at all on whether a prohibition on campaigning is viewpoint based.  Instead, he attempts to show a clearly established weight of authority from other courts with a handful of district-court opinions.  Those cases cannot support clearly established law.  First, citing a smattering of marginally relevant district-court opinions is far from showing a general weight of authority on the issue.[71]  Second, Plaintiff cites these cases for

_____

[68] *Fancher v. Barrientos*, 723 F.3d 1191, 1201 (10th Cir. 2013) (quoting *Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)).

[69] Though Plaintiff is far from clear on what his argument on the clearly-established prong actually is, the Court construes it as arguing that the policies are viewpoint discriminatory and, in the alternative, are content based.

[70] Plaintiff makes no argument on the germaneness requirement being viewpoint discriminatory.

[71] *See, e.g.*, *MacQuigg v. Albuquerque Pub. Sch. Bd. of Educ.*, No. 12-1137, 2015 WL 13659218 (D.N.M. Apr. 6, 2015); *Griffin v. Bryan*, 30 F. Supp. 3d 1139, 1181 (D.N.M. 2014); *Moore v. Asbury Park Bd. of Educ.*, No. Civ. A. 05-2971, 2005 WL 2033687 (D.N.J. 2005).

very general propositions of law.[72]  But, as the Supreme Court has instructed, a court should not "define clearly established law at a high level of generality" and a "general proposition . . . is of little help" in the clearly-established inquiry.[73]  One of the cases Plaintiff cites even acknowledges that whether a decorum standard like the one here is viewpoint based is a "difficult question" and several courts have answered the question differently.[74]

Alternatively, Plaintiff appears to argue that the individual Defendants violated clearly established law because the public-comment policies are content based, and so, because the forum is a designated public forum, they must survive strict scrutiny.  And, according to Plaintiff, it is clearly established that they do not.  Again, Plaintiff fails to shoulder his burden to show clearly established law.  Plaintiff once more offers broad propositions of law like "[t]here are no speech restrictions in a public forum except for the well-known fire-in-the-theatre type."[75]  But that general proposition ignores the more fundamental question here: whether the Commission meetings are a designated public forum in which content-based speech restrictions are subject to strict scrutiny.  And Plaintiff all but concedes that this is not clearly established: "The Tenth Circuit in *Shero v. City of Grove*, has declined to de facto rule that all Commission meetings are either designated public forum [sic] or a limited one."[76]  Instead, he invites the Court—given

---

[72] Plaintiff, for example, selectively quotes from *Mama Bears of Forsyth County v. McCall*, that "courts have generally held that outright prohibitions on profane language or profanity are not allowed."  642 F. Supp. 3d 1338, 1361 (D. Ga. 2022).  That is a general proposition that does not clearly establish law about the particular public-comment policies here.  But more fatal to Plaintiff's argument is the very next sentence of the opinion: "However, that is not to say that restrictions on profanity can never be unconstitutional."  *Id.*  The case, in fact, suggests that a prohibition on profanity may be constitutional where it prohibits "profane remarks that 'disrupt[], disturb[], or otherwise impede[] the orderly conduct of any Council meeting'"—just like the public-comment policies here.  *Id.* (quoting *Acosta v. City of Costa Mesa*, 718 F.3d 800, 812–13 (9th Cir. 2013)).

[73] *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

[74] *MacQuigg v. Albuquerque Pub. Schs. Bd. of Educ.*, No. 12-1137, 2015 WL 13659218, at *4–5 (D.N.M. Apr. 6, 2015).

[75] Doc. 103 at 21 (citing *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942)).

[76] *Id.* at 20 (citation omitted).

what he describes as an "open question of law"—to "assume it is a public forum subject to strict scrutiny."[77]   Plaintiff has fallen far short of demonstrating that the law clearly established that the Commission meetings were a designated public forum in which content-based restrictions must pass strict scrutiny, rather than the more lenient scrutiny for limited public forums.

Because the individual Defendants—by enforcing the public-comment policies at a Commission meeting—did not violate Plaintiff's clearly established right, the individual Defendants are entitled to qualified immunity on Claims I and II.  The Court grants the individual Defendants' motions to dismiss on these claims.

### (b.) Remaining First Amendment Claims (Claims III, VII, and VIII)

The above analysis resolves Plaintiff's other First Amendment claims against the individual Defendants.  As for the free-speech retaliation claim (Claim III) against all individual Defendants, "[t]o state a claim for First Amendment retaliation, a plaintiff must allege . . . that [he] was engaged in constitutionally protected activity . . . ."[78]  And because the individual Defendants invoke qualified immunity, it must be clearly established that Plaintiff engaged in constitutionally protected activity.[79]  As explained above, Plaintiff has not alleged that he engaged in constitutionally protected activity that was clearly established.

Similarly for the unconstitutional-conditions claim (Claim VII) against the individual Commission Defendants, Plaintiff must allege that the Defendants "place[d] a condition on the

---

[77] *Id.* at 21.

[78] *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1172 (10th Cir. 2021) (citing *McBeth v. Himes*, 598 F.3d 708, 727 (10th Cir. 2010)).

[79] *See, e.g.*, *Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022) (explaining that where a defendant raises qualified immunity for a First Amendment retaliation claim, Plaintiff must show that it was clearly established that his conduct was constitutionally protected).

exercise of a constitutionally protected right."[80]  The individual Commission Defendants again raise qualified immunity for this claim, so that the constitutionally protected right must be clearly established.[81]  Once more, Plaintiff has failed to allege that he exercised a constitutionally protected right that was clearly established.

Finally, on Plaintiff's claim for free-speech retaliatory arrest (Claim VIII) against the individual Officer Defendants, Plaintiff must allege that he was engaged in constitutionally protected activity.[82]  By now the reader knows what comes next: The individual Officer Defendants raise qualified immunity, so that it must be clearly established that the activity was constitutionally protected, and Plaintiff has failed to allege that he engaged in an constitutionally protected activity that was clearly established.

The individual Defendants are entitled to qualified immunity on Plaintiff's remaining First Amendment individual-capacity claims (Claims III, VII, and VIII).

### (3) Remaining Claims Against Officer Defendants (Claims IX and X)

Plaintiff brings two remaining individual-capacity claims against the Officer Defendants: "Fourth Amendment Violation—Unlawful Arrest/Failure-to-Intervene"[83] (Claim IX) and malicious prosecution (Claim X).  The Court construes Claim IX as alleging two separate claims: a false-arrest claim and a failure-to-intervene claim.  The Court addresses each separately.

---

[80] *Petrella v. Brownback*, 787 F.3d 1242, 1265 (10th Cir. 2015) (citing *Reedy v. Werholtz*, 660 F.3d 1270, 1277 (10th Cir. 2011)).

[81] *See Irizarry*, 38 F.4th at 1294.

[82] *See Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020) (citing *Nieves v. Bartlett*, 587 U.S. 391, 407–408 (2019)).

[83] Doc. 81 at 63.

### (a.) False Arrest

Under § 1983, an arrestee can assert a claim for false arrest by pleading the common law

elements of the claim.[84]  Under Kansas law:

> One seeking to recover for false arrest or false imprisonment must
> prove that he was unlawfully caused to be arrested by the
> defendants, and, though it is not necessary that the arrest was
> directly ordered by the defendants, it must appear that they either
> instigated it, assisted in the arrest, or by some means directed,
> countenanced or encouraged it.[85]

An unlawful arrest occurs when there is no probable cause to support the arrest.[86]  "Probable

cause exists if facts and circumstances within the arresting officer's knowledge and of which he

or she has reasonably trustworthy information are sufficient to lead a prudent person to believe

that the arrestee has committed or is committing an offense."[87]  Probable cause does not demand

that there be knowledge or facts sufficient for a finding of guilt, but it requires "more than mere

suspicion."[88]  Finally, where a Plaintiff's claim requires that no probable cause existed for an

arrest, the defendant's invocation of qualified immunity changes the inquiry (in relation to the

clearly-established prong) from asking whether no *actual* probable cause existed to whether no

*arguable* probable cause existed.[89]

As a threshold issue, Plaintiff has failed to make any specific, individualized allegations

against Defendant Wold.  He does not allege that Wold was present for the arrest, let alone that

---

[84] *Turner v. Delaney*, No. 10-2533-JWL, 2015 WL 4066637, at *5 (D. Kan. July 2, 2015) (citing *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996)).

[85] *Thompson v. Gen. Fin. Co.*, 468 P.2d 269, 280 (Kan. 1970).

[86] *Id.*

[87] *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

[88] *United States v. Vazquez-Pulido*, 155 F.3d 1213, 1216 (10th Cir. 1998).

[89] *See A.M. v. Holmes*, 830 F.3d 1123, 1139 (10th Cir. 2016) ("As a practical matter, we implement this [clearly-established-law] standard by asking whether there was 'arguable probable cause' for an arrest . . . . (alteration in original) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300 (10th Cir. 2012))).

he arrested or assisted in arresting Plaintiff.  The only allegation naming Defendant Wold is a conclusory one—"Wold . . . had the opportunity to intervene in each of the unlawful arrests of the plaintiff but failed to do so"—which the Court does not credit as a threadbare, conclusory allegation.  Therefore, because Plaintiff has failed to give fair notice of the claims against Defendant Wold,[90] the Court dismisses them.

Plaintiff alleges two arrests—one on April 20, 2022; another on May 1, 2024—and Plaintiff has plausibly pleaded that the Officer Defendants lacked arguable probable cause for each arrest.  As for the April 20, 2022 arrest, Plaintiff alleges that Armbrister arrested him and Kruzel assisted in arresting him.[91]  Before his arrest, Plaintiff had a verbal disagreement with Almon, but he was not threatening, violent, or otherwise intimidating, even though he used "earthy and perhaps repugnant words."[92]  Plaintiff was seated quietly when Armbrister and Kruzel removed him from the meeting room even though he caused no disturbance.  Kruzel then filed a police report and stated that Plaintiff was arrested for disorderly conduct in violation of K.S.A. § 21-6203(a)(3).  Plaintiff alleges that contrary to Kruzel's police report—which Plaintiff alleges was fabricated and without factual support—he did not interrupt or delay the meeting from starting on time and did not otherwise disturb the meeting.  Based on those allegations, which the Court must accept as true for this motion to dismiss, a prudent person would not believe that Plaintiff had committed—even arguably committed—disorderly conduct, and thus Armbrister and Kruzel did not have arguable probable cause to arrest Plaintiff for that offense.

---

[90] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 565 n.10 (2007)).

[91] Plaintiff makes several specific and individualized allegations regarding Defendants Armbrister and Kruzel's arrest of him.  *See, e.g.*, Doc. 81 ¶¶ 58–65.  Contrary to the Officer Defendants' argument, those allegations provide fair notice of "exactly *who* is alleged to have done *what* to *whom*."  *Robbins*, 519 F.3d at 1250 (citing *Twombly*, 550 U.S. at 565).

[92] Doc. 81 ¶ 55.

Moreover, as plead, Armbrister and Kruzel violated clearly established law by arresting Plaintiff without probable cause for sitting silently and conversing with Almon, even if a foul-mouthed conversation.

As for the May 1, 2024 arrest, Plaintiff alleges that he attended the Commission meeting, and stood in a spacious area at the front of the audience section because all the seats were filled. From this area, he did not block anyone's view or passage through the area. Other aisles also allowed walking room past Plaintiff. Plaintiff stood silently. An unnamed deputy then asked (but did not require) Plaintiff to leave. After Plaintiff declined, the meeting then recessed, and Defendants Channel and Coleman entered the room and arrested Plaintiff for disrupting a meeting in violation of K.S.A. § 21-5922.[93] Again, based on those allegations, which the Court accepts as true, a prudent person would not believe that Plaintiff had disrupted (even arguably disrupted) the Commission meeting in violation of K.S.A. § 21-5922. So as plead, Channel and Coleman violated clearly established law by arresting Plaintiff without probable cause for silently standing in the meeting room without blocking or hindering the meeting.

The Officer Defendants are not entitled to qualified immunity on Claim IX. In particular, Armbrister and Kruzel are not entitled to qualified immunity for the April 20, 2022 arrest, and Channel and Coleman are not entitled to qualified immunity for the May 1, 2024 arrest. The Court denies the motion to dismiss those claims.

### (b.) Failure to Intervene

To state a claim for failure to intervene, the plaintiff must allege that (1) "a government officer violated his constitutional rights," (2) "a *different* government actor (the defendant)

---

[93] Again, Plaintiff makes specific and individualized allegations about Defendants Channel and Coleman's arrest of him, which provides fair notice to the Defendants of the claims against them. *See id.* ¶¶ 289–290.

observed or had reasons to know about that constitutional violation," and (3) "the defendant had a realistic opportunity to intervene, but failed to do so."[94]  Those elements draw a distinction between the violating officer and the observing officer, and the latter is subject to liability for a failure-to-intervene claim.  Plaintiff has alleged a failure-to-intervene claim arising from both the April 20, 2022 arrest and the May 1, 2024 arrest.  For the first arrest, Plaintiff alleges that Armbrister arrested him and Kuzel assisted in the arrest.  They are both therefore the "violating officers" and satisfy the first element of the failure-to-intervene claim.  But Plaintiff fails to allege that either of the other officers—Channel or Coleman—were present at the arrest or had any way of knowing about the arrest.  Although Plaintiff alleges that "each [officer] had the opportunity to intervene,"[95] that is simply a threadbare recitation of an element of the claim—in other words, a legal conclusion—which court disregards in evaluating whether a plaintiff has stated a claim.[96]  Plaintiff has therefore failed to allege the second element.  Plaintiff has also failed to allege the third element because without knowledge of the constitutional violation, Channel and Coleman could not have had a realistic opportunity to intervene.  Plaintiff therefore has failed to plausible allege a failure-to-intervene claim against Channel and Coleman.

Plaintiffs claim arising from the May 1, 2024 arrest fails for similar reasons.  Plaintiff alleges that Channel and Coleman are the "violating officers" because they arrested him in violation of his constitutional rights.  But, once again, Plaintiff fails to allege that either Armbrister or Kruzel observed or had reason to know about the arrest; Plaintiff does not even allege that they were present for the arrest.  Although Plaintiff alleges that these defendants had

---

[94] *Bledsoe v. Carreno*, 53 F.4th 589, 616 (10th Cir. 2022) (first citing *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015); and then citing *Est. of Booker v. Gomez*, 745 F.3d 405, 422–23 (10th Cir. 2014)).

[95] Doc. 81 ¶ 312.

[96] *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

the opportunity to intervene, the Court disregards that conclusory allegation.  Plaintiff has failed

to plausibly allege a failure-to-intervene claim Defendants Armbrister and Kruzel.

### (c.) Malicious Prosecution

When evaluating a § 1983 malicious-prosecution claim, the court begins with the

common law elements for malicious prosecution, but the ultimate question is whether Plaintiff

has proven the deprivation of a constitutional right.[97]  A plaintiff must show that "(1) the

defendant caused the plaintiff's continued confinement or prosecution; (2) the original action

terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued

confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained

damages."[98]

Plaintiff's malicious-prosecution claim fails against all Officer Defendants except Kruzel

because he has failed to allege causation regarding them.  To allege causation, a plaintiff must

allege that the defendant officer caused the plaintiff's continued confinement after legal process

has begun.  But a state judge's probable-cause determination following a warrantless arrest can

break the causal chain between the officer's warrantless arrest and plaintiff's continued

confinement.[99]  So can the prosecutor's subsequent decision to bring charges.[100]  That chain is

not broken, however, if the judge's probable-cause determination or prosecutor's charging

---

[97] *See Pierce v. Gilchrist*, 359 F.3d 1279, 1288–89 (10th Cir. 2004).

[98] *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022).

[99] *Taylor v. Meacham*, 82 F.3d 1556, 1563–64 (10th Cir. 1996) (concluding that a judge's probable-cause determination broke the "chain of causation" (internal quotation marks omitted)); *Barham v. Town of Greybull*, 483 F. App'x 506, 509 (10th Cir. 2012) ("[T]hus the chain of causation was broken by . . . the state court's decision to bind Plaintiff over at the preliminary hearing." (citing *Taylor*, 82 F.3d at 1564)); *see also Bledsoe v. Bd. of Cnty. Comm'rs of Jefferson*, 501 F. Supp. 3d 1059, 1129–30 (D. Kan. 2020), *rev'd on other grounds sub nom. Bledsoe v. Carreno*, 53 F.4th 589 (10th Cir. 2022) (discussing causation).

[100] *See, e.g.*, *Barham*, 483 F. App'x at 509 ("[T]hus the chain of causation was broken by the prosecutor's decision to file charges . . . ." (citing *Taylor*, 82 F.3d at 1564)).

decision is based on an officer's false statements or exclusion of exculpatory information in a probable-cause affidavit.[101]  Nor is it broken if an individual, though not writing a probable-cause affidavit, "prevaricates and distorts evidence to convince the prosecuting authorities to press charges."[102]

Taking Plaintiff's allegations as true and construing them in the light most favorable to him, the Court concludes that Plaintiff alleges that a state judge made a probable-cause determination following his warrantless arrests and bound him over for trial and that state prosecutors charged him following each arrest.[103]  Each of those events breaks the causal chain, absent some allegation that the Defendant Officers submitted false information in a probable-cause affidavit or otherwise distorted evidence.

Plaintiff makes only a threadbare recital of allegations against the Officer Defendants (except Kruzel, who is discussed below) that they included false information in a probable-cause affidavit or otherwise distorted evidence.  The only allegation that the Officer Defendants did so is this sentence: "the individual Defendant police officers, at the direction and approval of the defendant Armbrister . . . omitted . . . information and other exculpatory information from their

---

[101] *See, e.g.*, *Pollack v. Miller*, 859 F. App'x 856, 860–61 (involving malicious-prosecution claim where probable-cause affidavit included "allegedly fabricated post-arrest interview," which served as basis for judge's probable-cause determination); *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) (describing malicious-prosecution claim as involving "a judge's probable-cause determination [being] predicated solely on a police officer's false statements"); *Carreno*, 53 F.4th at 614 (concluding that causation was alleged because defendants "fabricated" evidence and "suppressed" exculpatory evidence).

[102] *Pierce*, 359 F.3d at 1293.  Plaintiff selectively quotes from *Pierce* to support his argument that if an arrest per se forms an "inseparable basis" for the judicial probable-cause determination, that determination does not break the causal chain.  *Id.* at 1296.  But the full quotation from *Pierce* is that causation is sufficiently alleged where "false reports became one of the inseparable bases for the charges . . . and the District Attorney's decision to proceed to trial."  *Id.* That full quotation makes clear that the causation element depends on a false report, not simply on the arrest per se.

[103] Doc. 81 ¶ 68 (alleging that evidence was presented to "the prosecutor and magistrate"); *id.* ¶ 316 (alleging that charges were brought against Plaintiff); *id.* ¶ 321 (alleging that Plaintiff had to post bonds for release each time)

presentation of evidence to the prosecutor and magistrate."[104]  That allegation is insufficient to allege causation for two reasons.  First, the allegation is not individualized and does not show the Defendant Officers' personal participation in excluding exculpatory information; instead, it treats them collectively as "the individual Defendants."  Second, Plaintiff never alleges that the Officer Defendants submitted a probable-cause affidavit, incident report, or any other information that formed the basis of the judge's probable-cause determination or the prosecutor's decision to bring charges.  Without such an allegation, the causal chain remains broken, and Plaintiff has therefore failed to allege the causation required for a malicious-prosecution claim.

Plaintiff has alleged, however, that Kruzel submitted a probable-cause warrant—relied on by the judge and prosecutors—that contained false information and excluded exculpatory evidence, which does sufficiently allege causation.  But Plaintiff has only alleged that in relation to the April 20, 2022 arrest, not the May 1, 2024 arrest.  So Plaintiff has adequately plead causation for the malicious-prosecution claim against Kruzel based only on the April 20, 2022 arrest.

Plaintiff has also properly alleged the other elements of the claim against Defendant Kruzel for the April 20, 2022 arrest.  He has alleged that the original action terminated in his favor because he alleged that the prosecutor dropped the charge against him.[105]  He has alleged, as explained above, that no probable cause—or arguable probable cause—existed for the original arrest.  Plaintiff has also alleged that Kruzel acted with malice, which "may be inferred" from

---

[104] *Id.* ¶ 68.

[105] *See Thompson v. Clark*, 596 U.S. 36, 49 (holding that Plaintiff need only show that "the criminal prosecution ended without a conviction" and that dismissal of charges satisfies that requirement).

Kruzel's "caus[ing] the prosecution without arguable probable cause."[106]  Finally, Plaintiff has

alleged that he suffered injury.[107]  He therefore plausibly states a claim for malicious prosecution

against Defendant Kruzel arising out of the April 20, 2022 arrest.  The Court therefore dismisses

Claim X except as to Kruzel.

### B.  Official-Capacity Claims

Plaintiff brings the following official-capacity claims against the County: right to petition

(Claim I), free-speech discrimination (Claim II), free-speech retaliation (Claim III), class-of-one

equal protection (Claim IV), an as-applied challenge to the public-comment policies for content

and viewpoint discrimination (Claim V), a facial challenge to the policies for content and

viewpoint discriminaiton (Claim VI), and unconstitutional conditions (Claim VII).  Under

*Monell v. Department of Social Services of the City of New York*,[108] an injured plaintiff may hold

a municipal entity liable "when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflict[] the injury."[109]  The claim has three general requirements: (1) an underlying injury to a

constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link

between the policy or custom and the injury.[110]  A plaintiff may demonstrate a municipal policy

through a formal regulation of the municipality's governing body.[111]  And "where a plaintiff

---

[106] *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) (citing *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008), *abrogated on other grounds by Carbajal v. Watada*, No. 21-1370, 2024 WL 3887252 (Aug. 21, 2024)).

[107] Doc. 81 ¶ 322.

[108] 436 U.S. 658 (1978).

[109] *Id.* at 694.

[110] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[111] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) ("A municipal policy or custom may take the form of . . . 'a formal regulation or policy statement . . . .'" (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189–90 (10th Cir. 2010))).

claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward."[112]  Critically, when a municipality's officers claim qualified immunity, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[113]

### (1) Equal Protection

Plaintiff brings a class-of-one equal protection claim against the County, which must fail under *Monell* because he has not alleged an underlying constitutional violation by any of the County's officers.  As explained above, he fails to state a class-of-one equal protection violation for two reasons.  First, he fails to allege that he was similarly situated in every material respect, and second, even if he had, the County had a rational basis for its action: maintaining order during its public meeting.  As detailed earlier in this Memorandum and Order, Plaintiff has failed to allege an underlying equal protection violation by the County's officers, and so, Plaintiff has failed to allege an Equal Protection *Monell* claim against the County.

### (2) First Amendment Claims

As a threshold issue on these claims, it is undisputed that Plaintiff has alleged that the public-comment policies constituted an official policy or custom of Douglas County.  And when the Plaintiff plausibly alleges that the policy itself violated his rights, the causation element is ordinarily also met.[114]  So whether Plaintiff has plausibly alleged *Monell* claims based on the

---

[112] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

[113] *Hinton v. City of Elwood*, 997 F.2d at 782; *see also Jiron v. City of Lakewood*, 392 F.3d 410, 419 n.8 (10th Cir. 2004) ("When a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation—i.e., the first step of the qualified immunity analysis—a finding of qualified immunity *does* preclude the imposition of municipal liability.").

[114] *See Brown*, 520 U.S. at 404.

public-comment policies depends on whether he has plausibly alleged that they violate his constitutional rights.

Plaintiff challenges the public-comment policies on three First Amendment grounds: (1) that the policies are unconstitutionally content and viewpoint discriminatory (Counts I, II, and VI),[115] (2) that the policies are unconstitutionally vague (Counts V and VI), and (3) that the Defendant County arbitrarily enforces them against Plaintiff (Count V).   He seeks damages on Counts I and II, and declaratory and injunctive relief on Counts V and VI. Counts V and VI are as-applied and facial challenges, respectively.  The Court first addresses Plaintiff's claims that the public-comment policies are unconstitutionally content and viewpoint discriminatory.  Then it addresses the vagueness challenge, and finally it addresses his claim that the County arbitrarily enforces the policies against him.

### (a.) Content and Viewpoint Discrimination

As discussed above, the Tenth Circuit has declined to decide whether county-commission meetings constitute designated public forums or limited public forums.  Instead, in cases that squarely raised the issue, the Tenth Circuit decided that the distinction was irrelevant because the policies in question survived even the heightened scrutiny applicable to designated public forums.[116]  The Tenth Circuit, however, "has offered 'three non-exhaustive factors to consider in determining whether the government has created a designated public forum' instead of a limited

---

[115] As explained above, the Court address Plaintiff's free-speech and right-to-petition claims under the same rubric.  *See supra* note 48 and accompanying text.

[116] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) ("We need not decide whether a city council meeting is a designated public forum or a limited public forum, however, as the time limitation on [the plaintiff's] speech satisfies the more stringent strict scrutiny standard."); *see also Griffin v. Bryant*, 677 F. App'x 458, 462 n.7 (10th Cir. 2017) ("Because we conclude that [the plaintiff] was not restrained from speaking during the Council meeting and that the time limit on his speech during the Public Input portion of the meeting satisfies the strict scrutiny standard . . . we need not decide whether the Council meeting is a designated public forum or a limited public forum.").

public forum: (1) the forum's purpose; (2) the extent of the forum's use; and (3) the government's intent in opening the forum to the public."[117]  Courts "will not find that a public forum has been created in the face of clear evidence of contrary intent," or when "the nature of the property is inconsistent with expressive activity."

Given the open question of law, and the fact-intensive nature of forum analysis,[118] the Court declines to resolve the forum status of the Commission meetings at this early stage in the litigation.  Rather, the Court assumes without deciding that heightened scrutiny applies for the purpose of this Order.  The scrutiny's particular formulation depends on whether the restriction is content-based or content-neutral.

> For the purposes of a content-neutral regulation, "the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation, and does not burden substantially more speech than is necessary to further the government's legitimate interests."  In contrast, a content-based restriction is narrowly tailored only if it is the least restrictive means of achieving the government's compelling objective.[119]

Thus, before considering whether the public-comment policies are narrowly tailored, the Court must determine whether they are content-based or content-neutral.  Neither party offers nonconclusory assertions on this point.  Plaintiff quotes the content-based "least-restrictive means" test in his briefing, without providing any argument for why the public-comment policies

---

[117] *Celebrity Attractions, Inc. v. Okla. City Pub. Prop. Auth.*, 660 F. App'x 600, 605 (10th Cir. 2016) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1129 (10th Cir. 2012)).

[118] *See Verlo v. Martinez*, 820 F.3d 1113, 1144 (10th Cir. 2016) ("[F]orum status is an inherently factual inquiry about the government's intent and the surrounding circumstances that requires the district court to make detailed factual findings." (citing *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1018 (D.C. Cir. 1988) ("[I]dentifying the government's intent . . . raises inherently factual issues that cannot be resolved on a Rule 12(b)(6) motion."))).

[119] *Verlo*, 820 F.3d at 1134 (quoting *Wells v. City and County of Denver*, 257 F.3d 1132, 1148 (10th Cir. 2001)).

are content-based.[120]  The County argues that the public-comment policies are content neutral, but like Plaintiff, offers only conclusory statements on that point.  In any event, because the public-comment policies fail narrow tailoring even under the more lenient content-neutral standard, the Court need not decide at this point whether the policies are content-neutral or not.

Plaintiff argues that the public-comment policies do not survive strict scrutiny because they are not narrowly tailored—in other words, they burden substantially more speech than is necessary to achieve the government's interest.[121]  Plaintiff does not appear to challenge that the County has a substantial governmental interest in maintaining "orderly and efficient meetings."[122]  The County argues that the public-comment policies are narrowly tailored, but in its argument, misstates what narrow tailoring requires in the more lenient content-neutral context.  The County argues, citing *Ward v. Rock Against Racism*,[123] that narrow tailoring requires "only that the government's legitimate interest 'would be achieved less effectively absent the regulation.'"[124]  But the County's articulation of narrow tailoring leaves out an essential qualification that *Ward* itself noted: "To be sure, this standard does not mean that a . . . regulation may burden *substantially more speech than is necessary* to further the government's legitimate interest."[125]  At this stage, then, to show that the policies are not narrowly tailored,

---

[120] Plaintiff also alleges in the TAC that the decorum rule is viewpoint based because "giving offense is a viewpoint" and "personal attacks are viewpoint discrimination."  Doc. 81 ¶¶ 196, 197.

[121] Plaintiff also raises an argument that the public-comment policies are not valid speech restrictions because the Commission did not use the proper procedures to promulgate them under Kansas Home Rule statutes, K.S.A. § 19-101(a), and the Kansas Open Meetings Act, K.S.A. § 75-4317.  The Court fails to see Plaintiff's point in making those arguments, but to the extent he attempts to base his § 1983 suit on them, the Court rejects the arguments: "Section 1983 does not, however, provide a basis for redressing violations of *state* law, but only for those violations of *federal* law done under color of state law."  *Jones v. City and County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988) (citing *Gomez v. Toledo*, 446 U.S. 634, 640 (1980)).

[122] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (finding a significant government interest).

[123] 491 U.S. 781, 791 (1989).

[124] Doc. 92 at 26.

[125] *Ward*, 491 U.S. at 799.

Plaintiff need only plead that the public-comment policies burden substantially more speech than is necessary to achieve its interest in maintaining orderly and efficient meetings.

Taking Plaintiff's allegations as true and construing them in the light most favorable to him, the Court concludes that Plaintiff has met that burden. Plaintiff alleges, for example, that the prohibition on campaigning prevents members of the public from saying that they support Plaintiff's campaign or his policy positions, so that a member could say "I am against taxes" but not "I support [Plaintiff's] position on taxes." And he also alleges that members of the public may not use vulgar language. Given that members of the public are entitled to three uninterrupted minutes during the public-comment period, it is not clear—based on the allegations—that such speech causes disruption or disorder when the Commission has already set aside dedicated time for the individual speakers. Moreover, the public-comment policies also putatively prohibit signs that feature speech that contravenes the public-comment policies. It is not apparent how the mere presence of a sign disrupts or causes disorder during the meetings or public-comment periods. At this initial stage, Plaintiff has therefore alleged that the public-comment policies burden substantially more speech than is necessary to promote orderly and efficient meetings. Thus, Plaintiff has stated a plausible claim that the public-comment policies do not survive narrow tailoring for content-neutral restrictions. The County and Commission Defendants' motion to dismiss Plaintiff's facial and as-applied challenges to the public-comment policies based on content and viewpoint discrimination is denied.

### (b.) Vagueness

Plaintiff next challenges as vague each of the public-comment policies' components: (1) the germaneness requirement, (2) the decorum requirement, (3) and the prohibition on campaigning.

"A statute can be impermissibly vague for either of two independent reasons.  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits.  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement."[126]  "To mount a facial vagueness challenge, the litigant must show that the potential chilling effect on protected expression is 'both real and substantial.'"[127]  The void-for-vagueness doctrine grew out of the due process clause in the criminal law context; though it can apply to civil cases, "[t]o find a civil statute void for vagueness, the statute must be so vague and indefinite as really to be no rule or standard at all."[128]

Beginning with the germaneness requirement, Plaintiff alleges that members of the public do not understand what "the general business of the Douglas County Commissioner"[129] encompasses.  The fact that Plaintiff may offer different reasonable interpretations of what constitutes the Commission's "general business" does not support a finding that speakers lacked a reasonable opportunity to understand what speech was prohibited.[130]  "Condemned to the use of words, we can never expect mathematical certainty from our language."[131]  To put this germaneness requirement into relief, consider a case relied on by Plaintiff, which involved a differently worded restriction that a federal court deemed impermissibly vague: a prohibition on

---

[126] *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

[127] *Jordan v. Pugh*, 425 F.3d 820, 828 (10th Cir. 2005) (quoting *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 216, (1975)).

[128] *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1170 (D.N.M. 2014) (quoting *Boutilier v. INS*, 387 U.S. 118, 123 (1967)).

[129] Doc. 81 ¶ 189.

[130] *See Gilmore v. Beveridge*, No. 22-2032-HLT, 2022 WL 3139023, at *7 (D. Kan. Aug. 5, 2022) (finding that a germane standard for a school board meeting is not unconstitutionally vague because "[t]he Court struggles to see how a person of ordinary intelligence would not understand that their remarks during a school board meeting should be relevant to the business of the school board.").

[131] *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972) (citation omitted).

"irrelevant" speech.[132]  That was impermissibly vague, the court found, because without some standard to clarify what speech might be irrelevant (that is, "irrelevant to what?"), it permitted unbounded arbitrary enforcement.[133]  But the germaneness requirement here gives more guidance on what speech is prohibited—speech on topics that do not fall within the Commission's general business.  A person of ordinary intelligence would have fair notice of what topics the germaneness requirement prohibited.

Turning to the decorum standard, it is facially clear about which types of speech are prohibited.  A person of ordinary intelligence would understand not to invade anyone's privacy, not to speak overly loudly, not to lob personal attacks at those present, not to repeat themselves, and to avoid interfering with the meeting.[134]  Though reasonable minds may disagree on whether a speaker violates the decorum requirement, Plaintiff has not plausibly alleged that the decorum requirement fails to provide speakers with fair notice of the type of conduct that is prohibited.

Turning finally to the campaigning prohibition, Plaintiff argues that "campaigning" is unconstitutionally vague.  The Court disagrees.  A person of ordinary intelligence would understand what "campaigning" entails: promoting the successful election of a political candidate.

Plaintiff alternatively argues that all components of the public-comment policies authorize arbitrary enforcement because the Commission "reserves the right" to shut off a speaker's microphone or remove the speaker if the speaker violates the policies.  But the

---

[132] *Marshall v. Amuso*, 571 F. Supp. 3d 412, 424 (E.D. Pa. 2021).

[133] *Id.*

[134] *See Grayned*, 408 U.S. at 110–12 (finding that an ordinance forbidding "noisy or diversionary activity that disrupts or is about to disrupt" school is not facially vague because, "[a]lthough the prohibited quantum of disturbance is not specified in the ordinance, it is apparent from the statute's announced purpose that the measure is whether normal school activity has been or is about to be disrupted." (citation omitted)).

presence of discretion alone cannot invalidate a policy on vagueness grounds,[135] and "reserving the right" merely indicates the Board's options for enforcing the public-comment policies through removal or muting the speaker's microphone.

In sum, the fact that certain speakers might have different understandings about which matters are germane does not satisfactorily allege that the germane standard is impermissibly vague. And the assertion that the decorum standard or prohibition against campaigning could be susceptible to different reasonable interpretations does not plausibly allege that the decorum standard is effectively standardless. To the extent that Plaintiff's facial and as-applied challenges assert vagueness, they are dismissed for failure to state a claim.

### (c.) Arbitrary Enforcement

The grounds for Plaintiff's as-applied challenge to the public-comment policies are far from clear. To the extent he argues that the policies are vague as applied to him, the claim is redundant of the facial challenge, and the Court's analysis above resolves the claim. Plaintiff appears, however, to allege that through arbitrary and unequal enforcement of the policies against him, the County has committed viewpoint discrimination against him. To state a claim for an as-applied challenges based on viewpoint discrimination, Plaintiff must allege that he was "prevented from speaking while someone espousing another viewpoint was permitted to do so."[136] Plaintiff's allegation on this is threadbare: "other speakers are permitted to dialogue with other members of the audience without reprisal while defendants apply 'vulgar' and

---

[135] *See Gilmore*, 2022 WL 3139023, at *8 (noting that the constitutional protection against vague policies "doesn't foreclose discretion altogether, especially where the provision at issue, like here, measures what is allowed and not allowed by objective criteria, e.g. relevant to school board business. 'For a school board to function, it must be able to keep its meetings in order, a requirement that necessarily demands that the moderator exercise some discretion over the number of speakers and the time allotted for each to speak.'" (quoting *Lowery v. Jefferson Cnty. Bd. of Ed.*, 586 F.3d 427, 436 (6th Cir. 2009))).

[136] *Harmon v. City of Norman*, 61 F.4th 779, 789 (10th Cir. 2023).

'inappropriate' speech restrictions to [Plaintiff]."[137]  Plaintiff has not plausibly alleged that the Commission arbitrarily prevented him from expressing his viewpoint, while it permitted another member of the public to express a contrary viewpoint.  Plaintiff alleges throughout the TAC that the Commission enforced the public-comment policies simply because they did not like Plaintiff, but the allegations do not plausibly allege that the Commission enforced them against him because of his particular viewpoint on a topic.

To the extent that Plaintiff's as-applied challenge rests on arbitrary enforcement, he has failed to state a claim, and it is therefore dismissed.

### (d.) Retaliation

Plaintiff brings a claim for retaliation against the County.  Though far from clear, Plaintiff's complaint appears to challenge two categories of retaliatory acts against him: (1) enforcement of the public-comment policies through removal from the meeting and shutting off his mic and (2) his arrests.

To the extent that Plaintiff challenges the former category—enforcement of the policies against him—his claim is redundant of Claims I, II, V, and VI.  To state a claim for retaliation under the First Amendment, the Plaintiff must allege that (1) "he . . . was engaged in constitutionally protected activity," (2) "the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) "the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."[138]

---

[137] Doc. 81 ¶ 188.

[138] *Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007) (citing *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000)).

Plaintiff has plausibly alleged all three elements.  First, as discussed above, he alleged that he was engaged in constitutionally protected activity while speaking during the public-comment period at Commission meetings.  Second, he has plausibly alleged that removal by officers from the public meeting would chill a person of ordinary firmness.  Defendants argue that Plaintiff has not alleged facts that demonstrate an actual chilling effect on other speakers.  For example, Defendants point out that Plaintiff himself has returned on many occasions to speak at the meetings.  But the test is an objective one;[139] Plaintiff's subjective reaction is not determinative.  Despite Defendants' argument to the contrary, under an objective standard, public removal from a meeting could be embarrassing and could easily chill a person of ordinary firmness from returning to speak.  In fact, the specter of law enforcement could chill speech not only because speakers fear removal, but also because they fear arrest.  Construing the allegations in the light most favorable to Plaintiff, the Court finds that removal by officers from the meeting would chill a person of ordinary firmness, and he has plausibly alleged the second element.

Finally, Plaintiff has plausibly alleged that muting and removing him was substantially motivated by his protected activity.  The TAC is filled with allegations that Plaintiff was muted or removed because of his signs and other comments during the meeting.  Therefore, to the extent that Plaintiff alleges retaliation by removing him from the meetings, he has stated a claim for relief.

But to the extent that Plaintiff challenges his arrests—rather than the removal from the meeting room—he has failed to plausibly allege a municipal policy or custom of retaliatory arrest.

---

[139] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) ("[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective . . . ." (alteration in original) (quoting *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004))).

> A plaintiff may demonstrate a "municipal policy or custom" in one of several ways:
>
> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom the authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[140]

*Monell* claims, however, are not meant to create *respondeat superior* liability for every constitutional violation that may involve a municipal employee.[141]  Ordinarily, a single incident of unconstitutional behavior is insufficient to impose municipal liability.[142]

To show a policy of retaliatory arrest, Plaintiff asserts in the TAC a host of conclusory legal elements of a municipal policy or custom.[143]  For example, he alleges that "[t]he Douglas County Commission, Douglas County, and Douglas County Sheriff each ratified each . . . arrest,"[144] and that "Defendant Armbrister . . . promulgated an unconstitutional policy."[145]  He further attempts to show policy or custom with the allegation that "[e]ach County Commissioner member who had final policy-making authority ratified each Commissioner president's [sic] unconstitutional action" and that "[t]he defendant Commissioners and the defendant Armbrister had a plan: suppress and retaliate . . . ."[146]  "Defendants formed a premeditated plan

---

[140] *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

[141] *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on *respondeat superior* theory.").

[142] *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

[143] He apparently means to show either an informal custom that is so widespread that it constitutes a custom or usage with the force of law or ratification by a final policymaker.  Doc. 103 at 11.

[144] Doc. 81 ¶ 129.

[145] *Id.* ¶ 135.

[146] *Id.* ¶ 257.

to retaliate . . . ."[147]  Plaintiff's arrests were "a deliberate premeditated, days-long conspiracy to . . . retaliate against [Plaintiff]."[148]  According to Plaintiff, these allegations amount to "an official retaliatory custom and policy of the defendant Sheriff and the Commissioners directed at [Plaintiff]."

Plaintiff's policy or custom allegations are exactly the kind that do not plausibly allege a claim.  They are all "wholly conclusory"[149] allegations of legal elements of an official policy or custom.  Admittedly, some of those allegations go beyond simply saying that a policy or custom existed (though some say no more than that).  But shorn of their bombast, they all reduce to conclusory allegations, which do not plausibly allege a policy or custom.  Because Plaintiff has failed to plausibly allege an official policy or custom of retaliatory arrests against Plaintiff—as is required by a *Monell* claim—Plaintiff has failed to state a *Monell* claim for retaliation based on the arrests.

The Court denies the Commission Defendants' motion to dismiss the retaliation claim against Defendant County to the extent that it is based on Plaintiff being muted or removed from the meetings.  But the Court grants to the extent that it is based on the arrests.

**IT IS THEREFORE ORDERED BY THE COURT** that the Commission Defendants' Motion to Dismiss (Doc. 91) is **granted in part** and **denied in part**.  The Officer Defendants' Motion to Dismiss (Doc. 94) is also **granted in part** and **denied in part**.

---

[147] *Id.* ¶ 296.

[148] *Id.* ¶ 292.

[149] *Sherman v. Klenke*, 653 F. App'x 580, 593 (10th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *George v. Unified Gov. of Wyandotte Cnty./Kan. City Kan.*, No. 22-2309, 2023 WL 1963953, at *3 (D. Kan. Feb. 13, 2023) ("To meet this element of her claim, plaintiff rests on conclusory assertions, which do not suffice.").

Claims I, II, and III are **dismissed** for failure to state a claim except as against Defendant County.  Claim IV is **dismissed** for failure to state a claim.  Claim VII is **dismissed** for failure to state a claim except as against Defendant County.  Claim VIII is **dismissed** for failure to state a claim.  Claim X is **dismissed** for failure to state a claim except as against Defendant Kruzel.

The following Defendants are **dismissed**: Defendants Portillo, Reid, Kelly, Willey, Plinsky, and Wold.

**IT IS SO ORDERED.**

Dated: February 19, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE