**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JUSTIN SPIEHS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:24-cv-4005-JAR-BGS |
| | ) | |
| JAY ARMBRISTER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT JAY ARMBRISTER'S ANSWERS TO PLAINTIFF'S FIRST INTERROGATORIES**

Defendant Jay Armbrister, through his counsel of record, provides his answers to Interrogatories as follows:

1. If you denied, in part or in whole, any request for admission from Dr. Spiehs, identify those facts that you contend support each of your denials.

**ANSWER:**

- **RFAs 4-5: See response to Interrogatories 8 and 10, below, incorporated here by reference.**

- **RFA 6: See response to Interrogatories 17, below, incorporated here by reference.**

- **RFA 8-9: See response to Interrogatory 8, below, incorporated here by reference.**

- **RFA 11: To the best of Sheriff Armbrister's recollection, the meeting scheduled to start at 5:30 p.m. was briefly delayed due to Plaintiff's arrest.**

- **RFA 16: Sheriff Armbrister had no such discussions. Sheriff Armbrister attended the April 20 BOCC meeting because he knew solar energy was on the agenda for discussion, which in his experience can be a contentious issue, and typically results in higher-than-normal citizen attendance. Before the meeting, Sheriff Armbrister told Commissioner Shannon Reid, and possibly Commissioner Shannon Portillo that if there was a problem and the commission wanted someone removed, they needed to let him know, because he was not going to do it on his own. Plaintiff was never mentioned. This was Sheriff Armbrister's only conversation with any commissioner before the meeting.**

EXHIBIT F



**ANSWER: See response to Interrogatory 2, incorporated here by reference. Insofar as Sheriff Armbrister can gather, the still shot above takes place approximately nine (9) seconds after the still shot in Interrogatory 2. To the best of Sheriff Armbrister's memory, he was the only one speaking at this point, and said, "Out," in an attempt to reiterated to Plaintiff that he needed to stand up and exit the meeting because he was under arrest.**

8. Identify every word verbatim you heard Dr. Spiehs say on April 20, 2022, while in the room waiting for the Douglas County Commission meeting to begin that you contend justified arresting Dr. Spiehs for disorderly conduct.

**ANSWER: Sheriff Armbrister cannot recall every word, verbatim, that he heard Plaintiff say to Mr. Almon. To the best of his memory, Plaintiff said something to the effect of, "I don't give a fuck what you think of me," and "you can fuck off" to Mr. Almon. However, Sheriff Armbrister arrested Plaintiff for disorderly conduct based on the totality of the circumstances, and not exclusively the substance of what Plaintiff said to Mr. Almon. Relevant factors that Sheriff Armbrister relied on were: (1) the close proximity between Mr. Almon and Plaintiff; (2) the volume and tone of Plaintiff's voice; (3) the fact that Plaintiff was using profane language directed at Mr. Almon; and (4) the fact that Plaintiff was holding a sign attached to a large, wooden stick at the time of his outburst, when Sheriff Armbrister was aware Plaintiff had previously been charged with criminal conduct after separating his sign from the stick, then waiving the stick in a manner that caused individuals to fear bodily harm.**