**IN THE DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JUSTIN SPIEHS,<br><br>Plaintiff,<br><br>v.<br><br>JAY ARMBRISTER, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 5:24-cv-4005-JAR-BGS |

**AFFIDAVIT OF KRISTEN CHANNEL**

I, Kristen Channel, of lawful age, do hereby declare:

1. At all times relevant to the above-captioned lawsuit, I was employed by the Douglas County Sheriff's Office as a patrol lieutenant.
2. I was equipped with a department-issued body-worn camera on May 1, 2024. The body-worn camera was functioning properly and recording in the ordinary course of my duties. The video attached to my affidavit as **Attachment 1** is a true and accurate copy of the video from my interactions at the May 1, 2024 Board of County Commissioners ("BOCC") meeting. The video recording accurately depicts the events as I observed them at the time, has not been altered or edited, and is a true and correct copy of the body-worn camera footage from that incident.
3. At or around 6:15 p.m. on May 1, 2024, Deputy Chase Coleman and I responded to a request for assistance made by Deputy Melissa Favre, who reported to dispatch that there was a subject refusing to leave the BOCC meeting that was taking place.
4. Upon arrival at 3755 E. 25th Street, Deputy Coleman and I spoke with Deputy Favre outside the building. Deputy Favre told us that the Commissioners and County Administrator Sarah Plinksky were asking us to remove Spiehs from the meeting because they believed he was

**EXHIBIT L**

causing a disturbance by holding a sign, blocking the aisle, and refusing to move. Deputy Favre also told us that the BOCC was currently in a recess because they felt like they couldn't continue the meeting.

5. As of the time I arrived at 3755 E. 25th Street, I had neither been present for, nor had any personal knowledge regarding what had taken place at the May 1, 2024 BOCC meeting.

6. While we were still outside, County Administrator Sarah Plinksky and County Counselor John Bullock exited the building to speak with us. Plinsky told us that Spiehs was causing a disturbance and needed to be removed. Plinsky told us that Spiehs was blocking the access path and standing next to the staff table, which made staff feel threatened, and that she had already moved one staff member who felt uncomfortable with Spiehs standing so close to the table. Plinsky also aid Spiehs had been asked multiple times to move away from the table and have a seat with the rest of the public audience, but would not.

7. Deputy Coleman and I entered the meeting room. I observed what I estimated to be approximately one-hundred (100) members of the public seated in rows of chairs facing the west end of the room. I also observed rows of table set up in a U-shape, with a podium in the middle.

8. I observed that the set-up of the meeting room appeared to intentionally create separation between the rows of chairs for the audience and the tables the commissioner and county staff were seated, to allow people access to approach the podium when needed and for the BOCC to conduct the meeting.

9. Upon entering the meeting room, I observed Spiehs standing beyond the front row of chairs for the audience, close to the end of one of the tables, holding a sign down near his legs.

10. I approached Spiehs and told him I was not asking him to remove his sign, but was asking him to move away a little ways from staff. Spiehs asked the grounds for my request and and what he was doing wrong, then stated that it was a public building and a public meeting and he could stand where he was if he wanted.
11. I asked Spiehs again to move down, and Spiehs responded that he would not.
12. I then told Spiehs that I was telling him to leave on behalf of the County Commission, and he again responded that he was declining.
13. Spiehs then told me he was not leaving and I responded that per the Sheriff, I was going to have to arrest him for disrupting the meeting.
14. Deputy Coleman then placed Spiehs under arrest for impeding, hindering, and disrupting the BOCC meeting, placed him in handcuffs, and took him to the detention center.
15. I prepared the report attached hereto as **Attachment** 2 in connection with the events at issue. I prepared the report at or near the time of the events described, based on my personal knowledge and observations. Preparing such reports is a regular practice of the Douglas County Sheriff's Office, and the report was made and kept in the course of the Douglas County Sheriff's Office's regularly conducted activity. The report has been maintained in the ordinary course of business, has not been altered or modified, and the attached report is a true and correct copy of the original.

FURTHER, AFFIANT SAITH NOUGHT.

KRISTEN CHANNEL

Date: 1/22/26

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal this 22 day of January 2026.

Notary Public

My Commission Expires: STATE OF KANSAS NOTARY PUBLIC HEATHER N. SMITHART My Appointment Expires 10/28/2028

# ATTACHMENT 1

# BODY CAM VIDEO
# FILED CONVENTIONALLY

## Case # D24-08706 Continued
## SUPPLEMENT

**Officer: Channel K - S401** **Supplement number: D24-08706-3**
**Date:** 07:25:46 05/02/24 **Page 1 of 1 - this Supplement**

On May 1, 2024, I, Lt. Kristen Channel, was the patrol lieutenant on the day shift rotation. At about 1815 hours, Deputy Farve notified dispatch that she needed assistance at the Douglas County Public Works building, 3755 E 25th St., because there was a subject refusing to leave the Board of County Commission meeting that was taking place.

Deputy Coleman and I responded to the Public Works building and met with Deputy Farve outside. She stated the Board of County Commission (BOCC) members, Karen Willey, Shannon Reed, and Patrick Kelly, as well as County Administrator, Sarah Plinksy, were requesting the removal of Justin Spiehs from the BOCC meeting. Deputy Farve said the BOCC believed Spiehs was causing a disturbance by holding a sign and blocking the aisle refusing to move and they were requesting his removal from the meeting. Deputy Farve said the BOCC was currently in recess because they felt like they couldn't continue the meeting.

The County Administrator, Sarah Plinksy, exited the building along with the Commission's counsel, John Bullock, and met with Coleman, Farve, and me. Plinksy said Spiehs was causing a disturbance and needed to be removed. I told her that I would not be removing Spiehs from the meeting because he had a sign at the meeting. She said it wasn't just the sign that was the issue. Plinsky said Spiehs was "disrupting the meeting." She said he was blocking the access path and was standing next to the staff table, which made staff feel threatened. She said she had already had to move one staff member who felt uncomfortable with Spiehs standing so close to the table. She said normally at BOCC meetings there is room between the staff and public audience. Plinksy said she asked Spiehs multiple times to move away from the table and have a seat with the rest of the public audience, but he didn't.

I spoke with Capt. Kellerman by phone and apprised him of the situation. He hung up with me to call Sheriff Armbrister to confirm how we were going to handle the situation if Spiehs refused to comply with BOCC directives to step back and rejoin the audience. I spoke with Capt. Kellerman again after he spoke with Sheriff Armbrister and he told me the Sheriff told him that if Spiehs wouldn't follow directives and continued to disrupt the meeting and had been asked by Commission to leave, he was to be told to leave on his own and if he didn't leave he would be arrested.

Deputy Coleman and I walked into the Public Works building followed by Deputy Farve. As I walked into the meeting room, I observed several rows of chairs which faced toward the west end of the room. About a hundred people, I believed to be members of the public, filled those chairs. There were also a few people standing along the wall in the area where the chairs were. Where the chairs faced, at the west end of the room, there were two tables with a podium in the middle parallel to the chair rows. At each end of the row of tables were tables that were set up perpendicularly, so all the tables made a sort of U-shaped pattern. These tables were where the BOCC members, as well as county staff, were seated facing toward the audience in the row of chairs. There was an obvious separation between the rows of chairs and the BOCC tables to allow people access to approach the podium when needed and for the BOCC to conduct the meeting.

Attachment 2

I saw Spiehs standing toward the front of the meeting room on the near the BOCC/staff tables with Deputy G. Gonzalez standing in between him and the tables. I could hear Spiehs talking loudly above everyone else in the room though I could not tell what he was saying. As I approached Spiehs, I saw that he was standing past the first row of chairs that had been set up for the public and was close to the right end of the BOCC table holding a sign down near his legs.

I told Spiehs that I was asking him to move away from the Commission table and staff. I gestured with my hand toward the public chair area. I told him that per the BOCC and the Sheriff that if he refused to move away from staff and have a seat or stand against the wall in the chair area he would be told to leave the meeting. He told me "I decline." He said a couple different times "I'm not leaving." At that point many members of the public audience began to yell and continued to yell at us as well as at the BOCC during my conversation with Spiehs. While I was talking with him there were times Spiehs looked over his shoulder back at the audience or turned to the audience as they were yelling as if he were encouraging the action.

I told Spiehs if he refused to leave he would be arrested for disruption of a meeting. I said the BOCC could not continue its meeting and the commissioners had requested he be removed. I told Spiehs he had options and I started to tell him he could either move away from the staff at their table and remain at the meeting, leave on his own, or be arrested, but he interrupted and said, "No, I'm staying. Thank you, Channel" and he turned away from me and toward the audience. At that the members of the public got louder and yelled, cheered, and clapped.

Spiehs was placed under arrest by Deputy Coleman for impeding, hindering, and disrupting the County Commission meeting. He was led from the building and Deputy Coleman transported him to the Douglas County Correctional Facility.

My body-worn and front facing patrol car cameras were activated.

Nothing further,

Lt K Channel