PLAINTIFF'S EXHIBIT

12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JUSTIN SPIEHS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 5:24-cv-4005-JAR-BGS |
| | ) | |
| JAY ARMBRISTER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANT JAY ARMBRISTER'S SUPPLEMENTAL ANSWERS TO PLAINTIFF'S FIRST INTERROGATORIES</u>**

Defendant Jay Armbrister, through his counsel of record, provides his supplemental answers to Interrogatories as follows:

1. If you denied, in part or in whole, any request for admission from Dr. Spiehs, identify those facts that you contend support each of your denials.

**ANSWER:**

- **<u>RFAs 4-5:</u> See response to Interrogatories 8 and 10, below, incorporated here by reference.**
- **<u>RFA 6:</u> See response to Interrogatories 17, below, incorporated here by reference.**
- **<u>RFA 8-9:</u> See response to Interrogatory 8, below, incorporated here by reference.**
- **<u>RFA 11:</u> To the best of Sheriff Armbrister's recollection, the meeting scheduled to start at 5:30 p.m. was briefly delayed due to Plaintiff's arrest.**
- **<u>RFA 16:</u> Sheriff Armbrister had no such discussions. Sheriff Armbrister attended the April 20 BOCC meeting because he knew solar energy was on the agenda for discussion, which in his experience can be a contentious issue, and typically results in higher-than-normal citizen attendance. Before the meeting, Sheriff Armbrister told Commissioner Shannon Reid, and possibly Commissioner Shannon Portillo that if there was a problem and the commission wanted someone removed, they needed to let him know, because he was not going to do it on his own. Plaintiff was never mentioned. This was Sheriff Armbrister's only conversation with any commissioner before the meeting.**

- **RFA 17: Sheriff Armbrister had no discussions with any deputy about Plaintiff before the April 20 BOCC meeting.**

- **RFA 18: See response to RFA 16, above, incorporated here by reference.**

- **RFA 22: Sheriff Armbrister told Plaintiff the BOCC would not let him display his sign during the meeting because it contained vulgarity but did not say the sign was "not allowed."**

- **RFA 25: Plaintiff never rose from his seat while addressing Mr. Almon, but he did turn his body in his seat to speak to Mr. Almon, as reflected in the still shot included in Interrogatory #2.**

- **RFA 26: In the still shot included in Interrogatory #2, Mr. Almon can be seen gesturing to Plaintiff, in response to Plaintiff, having just directed Plaintiff to watch his language, presumably after having just heard Plaintiff curse at Sheriff Armbrister.**

- **RFA 32: Plaintiff loudly said to Mr. Almon, "I don't give a fuck what you think of me," and "you can fuck off" to Michael Almon. Mr. Almon described Plaintiff's conduct to Deputy Kruzel as "hostile" and told Deputy Kruzel that at one point during the encounter, he (Almon) believed Plaintiff could have used the sign as a possible weapon and was in fear of being hit by the sign. When asked if he felt Plaintiff was trying to goad him into a fight, Almon also stated that while he could not know Plaintiff's intentions for sure, he was worried things would have escalated if law enforcement had not stepped in.**

- **RFA 36: Sheriff Armbrister had two separate interactions with Plaintiff on the night of April 20, 2022. During the first conversation, Sheriff Armbrister told Plaintiff the BOCC would not let him display his sign during the meeting because it contained vulgarity but did not "suggest" he leave the room. As admitted in RFA 37, during the second interaction, Sheriff Armbrister ordered, but did not "suggest" that Plaintiff leave the room.**

- **RFAs 38, 39, 40, 41: Sheriff Armbrister has been unable to find any factual inaccuracies in the report.**

- **RFA 42: To the best of Sheriff Armbrister's knowledge, he was able to, and did overhear everything that Plaintiff and Mr. Almon said to one another in the BOCC meeting room.**

- **RFA 43: See response to RFA 42, above, incorporated here by reference.**

2. What time do you believe or contend the event depicted below occurred on April 20, 2022, and what do you think or contend you heard Michael Almon say to Dr. Spiehs or Dr. Spiehs say to Mr. Almon at this precise time?




**ANSWER: Sheriff Armbrister is unaware of the specific time the events depicted in this interrogatory took place. His best guess is that these events took place in the minutes before 5:30. The video from which this picture was taken does not contain the entire relevant interaction, and the audio is difficult to make out.**

**In the period before this video recording began, Sheriff Armbrister was seated in the audience, approximately four rows directly behind Plaintiff. As the video shows, on the night in question Sheriff Armbrister was wearing a mask as a COVID precaution. To the best of his recollection, Plaintiff, from his seat, called Sheriff Armbrister a "pussy" for wearing a mask. Sheriff Armbrister responded, "My face, my choice." At that point, Plaintiff turned and loudly responded to Sheriff Armbrister, with words to the effect of, "You didn't give a fuck when it was my face, or when it was my fucking choice, you're a fucking pussy," and "I don't give a fuck what you say, I don't give a fuck what anybody thinks about me." At that point, citizen Michael Almon, who can be seen in the still shot above, directly behind Plaintiff, wearing a white mask and gesturing with his right hand, interjected, telling Plaintiff something to the effect of "Watch your language" Plaintiff responded by turning and looking at Mr. Alman, who was in close proximity to him, and loudly remarking words to the effect of, "I don't give a fuck what you think of me, you can fuck off." To the best of Sheriff Armbrister's recollection, the video this still shot was taken from begins shortly after that remark, as Sheriff Armbrister observed Plaintiff's conduct towards Mr. Almon, stood from his seat, and began walking towards Plaintiff to intervene. Sheriff Armbrister cannot recall what if anything, Mr. Almon was saying to Plaintiff or Plaintiff was saying to Mr. Almon at the precise moment this still shot was taken.**

3. What time did the photo below occur on April 20, 2022, and what words did you hear being said by any of these individuals at the time this photo depicts:




**ANSWER: See response to Interrogatory 2, incorporated here by reference. Insofar as Sheriff Armbrister can gather, the still shot above takes place less than one (1) second after the still shot referenced in Interrogatory 2. Sheriff Armbrister's memory as to the time and substance of the discussions taking place is the same as in his response to Interrogatory 2.**

4. What time do you contend the event depicted below in this occurred on April 20, 2022, and what, if anything, were you saying to Dr. Spiehs at that moment and what, if anything, was Dr. Spiehs saying at this precise moment in time?:




**ANSWER: See response to Interrogatory 2, incorporated here by reference. Insofar as Sheriff Armbrister can gather, the still shot above takes place one (1) second after the still shot referenced in Interrogatory 2. Sheriff Armbrister's memory as to the time and substance of the discussions taking place is the same as in his response to Interrogatory 2. The only words that are clearly audible to Sheriff Armbrister at the point in the video this still shot appears to be taken from are "fucking mouth" which Sheriff Armbrister believes comes from Plaintiff.**

5. What time do you contend the event depicted below occurred on April 20, 2022, and what, if anything, were you saying and what your gesture of your hand meant and to whom were you gesturing?



**ANSWER: See response to Interrogatory 2, incorporated here by reference. Insofar as Sheriff Armbrister can gather, the still shot above takes place approximately three (3) seconds after the still shot in Interrogatory 2. To the best of Sheriff Armbrister's memory, he said something to the effect of, "That's it, you're done. You're under arrest" and was indicating to Plaintiff via his hand gesture that he needed to leave the meeting.**

6. What time do you contend the event depicted below occurred on April 20, 2022, and what, if anything, were you saying and what did you hear being said at that precise moment?




**ANSWER: See response to Interrogatory 2, incorporated here by reference. Insofar as Sheriff Armbrister can gather, the still shot above takes place approximately six (6) seconds after the still shot in Interrogatory 2. To the best of Sheriff Armbrister's memory, he was the only one speaking at this point, and was telling Plaintiff, while gesturing towards Mr. Almon, that he could not act the way he acted towards a citizen (Mr. Almon) and that was why he was being removed.**

7. What time do you contend the event depicted below occurred on April 20, 2022, and what, if anything, were you saying and what did you hear being said at that precise moment?



**ANSWER: See response to Interrogatory 2, incorporated here by reference. Insofar as Sheriff Armbrister can gather, the still shot above takes place approximately nine (9) seconds after the still shot in Interrogatory 2. To the best of Sheriff Armbrister's memory, he was the only one speaking at this point, and said, "Out," in an attempt to reiterated to Plaintiff that he needed to stand up and exit the meeting because he was under arrest.**

8. Identify every word verbatim you heard Dr. Spiehs say on April 20, 2022, while in the room waiting for the Douglas County Commission meeting to begin that you contend justified arresting Dr. Spiehs for disorderly conduct.

**ANSWER: Sheriff Armbrister cannot recall every word, verbatim, that he heard Plaintiff say to Mr. Almon. To the best of his memory, Plaintiff said something to the effect of, "I don't give a fuck what you think of me," and "you can fuck off" to Mr. Almon. However, Sheriff Armbrister arrested Plaintiff for disorderly conduct based on the totality of the circumstances, and not exclusively the substance of what Plaintiff said to Mr. Almon. Relevant factors that Sheriff Armbrister relied on were: (1) the close proximity between Mr. Almon and Plaintiff; (2) the volume and tone of Plaintiff's voice; (3) the fact that Plaintiff was using profane language directed at Mr. Almon; and (4) the fact that Plaintiff was holding a sign attached to a large, wooden stick at the time of his outburst, when Sheriff Armbrister was aware Plaintiff had previously been charged with criminal conduct after separating his sign from the stick, then waiving the stick in a manner that caused individuals to fear bodily harm.**

**SUPPLEMENTAL RESPONSE: Although Sheriff Armbrister arrested Plaintiff for disorderly conduct based on the totality of the circumstances, set forth in the answer above, the specific words from Plaintiff that he relied on to support the arrest were Plaintiff saying something to the effect of, "I don't give a fuck what you think of me," and "you can fuck off" to Michael Almon.**

9. Identify every word verbatim you contend that Dr. Spiehs orally spoke on April 20, 2022, while in the room waiting for the Douglas County Commission meeting to begin that you contend justified arresting Dr. Spiehs for disorderly conduct.

**ANSWER: See response to Interrogatory 8, above, incorporated here by reference.**

**SUPPLEMENTAL RESPONSE: Although Sheriff Armbrister arrested Plaintiff for disorderly conduct based on the totality of the circumstances, set forth in the answer above, the specific words from Plaintiff that he relied on to support the arrest were Plaintiff saying something to the effect of, "I don't give a fuck what you think of me," and "you can fuck off" to Michael Almon.**

10. Identify each individual that was caused to experience on April 20, 2022, alarm, anger, or resentment by Dr. Spiehs and for each individual identified, identify every word verbatim Dr. Spiehs communicated to each individual that you contend caused alarm, anger, or resentment of that individual on April 20, 2022, while waiting for the Douglas County Commission meeting to begin.

**ANSWER: Sheriff Armbrister lacks knowledge or information sufficient to identify every individual who may have felt alarm, anger, or resentment based on Plaintiff's conduct. Plaintiff was arrested based on his conduct directed at Mr. Almon, specifically. Mr. Almon described Plaintiff's conduct to Deputy Kruzel as "hostile" and told Deputy Kruzel that at one point during the encounter, he (Almon) believed Plaintiff could have used the sign as a possible weapon and was in fear of being hit by the sign. When asked if he felt Plaintiff was trying to goad him into a fight, Almon also stated that while he could not know Plaintiff's intentions for sure, he was worried things would have escalated if law enforcement had not stepped in.**

**SUPPLEMENTAL RESPONSE: Michael Almon. Sheriff Armbrister cannot recall every word, verbatim, that he heard Plaintiff say to Mr. Almon. To the best of his memory, Plaintiff said something to the effect of, "I don't give a fuck what you think of me," and "you can fuck off" to Mr. Almon.**

11. Identify verbatim what you communicated to the County Commissioners and what each Commissioner communicated to you after you confronted Dr. Spiehs on April 20, 2022, about Dr. Spiehs' sign.

**ANSWER: Sheriff Armbrister had no interaction with any county commissioner after removing Plaintiff and arresting him.**

**SUPPLEMENTAL RESPONSE: Sheriff Armbrister did not communicate anything to the County Commissioners, and the County Commissioners did not communicate anything to him after he confronted Plaintiff about his sign.**

12. Identify each reason why you attended the April 20, 2022, open meeting of the Douglas County Commissioners and each reason why you confronted Dr. Spiehs about his sign prior to the meeting beginning.

**ANSWER: Sheriff Armbrister attended the April 20 BOCC meeting because he was aware solar energy was on the agenda for discussion, which in his experience can be a contentious issue, and typically results in higher-than-normal citizen attendance. The BOCC meeting was scheduled to be live streamed on the BOCC's YouTube channel. Sheriff Armbrister had previously been told by county staff that the BOCC had been warned about YouTube's vulgar language rules, which could result in its BOCC meetings being removed. When Sheriff Armbrister saw Plaintiff enter the BOCC chambers with a sign that said, "Dr. Spiehs For DGCO Commissioner Fuck These Liberal Motherfuckers," he therefore approached Plaintiff and told him the BOCC may not let him show his sign during the meeting because it contained vulgarity. Plaintiff responded with something to the effect of, "You can't censor me it's my First Amendment right." At that point, Sheriff Armbrister reiterated his message, then sat down. The conversation detailed in response to Interrogatory 2 took place shortly after Sheriff Armbrister sat down, approximately four rows directly behind Plaintiff.**

13. Identify each date you attended or were otherwise present in the meeting room of the Douglas County Commissioners 30 minutes prior to the start of a meeting or during a meeting since January 1, 2022 through present.

**ANSWER: To the best of his recollection, Sheriff Armbrister has never been present thirty (30) minutes prior to a BOCC meeting during the period from January 1, 2022 to present.**

14. Identify each reason why you believed you had authority to confront Dr. Spiehs on April 20, 2022, about his sign and each reason why you told him his sign was not permitted.

**ANSWER: Sheriff Armbrister's discussion with Plaintiff about his sign was a voluntary encounter and Sheriff Armbrister has authority to engage in voluntary encounters with the public at large. See response to Interrogatory 12, incorporated by reference, with regard to the basis for Sheriff Armbrister's concerns about the sign.**

15. Identify the unredacted original version of reports, incident reports, and every affidavit of you, Tyler Kruzel, Deputy Jimmy Wold, and Deputy C. Coleman regarding the April 20, 2022, arrest of Dr. Spiehs.

**ANSWER: See documents produced pursuant to Rule 26 disclosures.**

16. Identify all communications between you and every Douglas County Deputy regarding April 20, 2022, and Tyler Kruzel's affidavits about that day and Dr. Spiehs.

**ANSWER: The only such communication was between Sheriff Armbrister and Deputy Kruzel, who briefly discussed who would transport Plaintiff to jail and who would write the report.**

17. In the arrest report 3023A2201872 case no. D22-07970 it states as a description "Fighting words or noisy conduct to cause resentment." Do you contend that is an accurate statement as to why Dr. Spiehs was arrested and if you answer is not an unqualified "yes" identify each fact as to why that statement is not accurate.

**ANSWER: Yes.**

18. Identify all recordings and statements of any individual who witnessed April 20, 2022, event involving Dr. Spiehs waiting for the Douglas County Commissioner meeting to begin.

**ANSWER: The photos Plaintiff provided are from the only recording Sheriff Armbrister is aware of, which is believed to have been taken by a freelance reporter. Any non-privileged statements are contained the accompanying police records. See Bates No. DGSO 00001 – 00021.**

19. Identify all communications between you and each Douglas County Commissioner about Justin Spiehs or the events described in the Complaint on April 20, 2022.

**ANSWER: I did not have any communications with any commissioner about the arrest of Plaintiff before or after the incident.**

**SUPPLEMENTAL RESPONSE: Sheriff Armbrister believes he has had communications of some kind with individual commissioners about Plaintiff at some point but has no recollection of when or where, or the substance of any such communication. Sheriff Armbrister did not have any communications with any commissioner about the arrest of Plaintiff on April 20, 202 before or after the incident.**

20. Identify all speech of Dr. Spiehs on April 20, 2022, that you contend constitutes "noisy conduct" as that phrase is used in K.S.A. 21-6203(a)(3).

**ANSWER: See Defendant's answer to Interrogatory 8, incorporated here by reference.**

**SUPPLEMENTAL RESPONSE: Sheriff Armbrister contends that the following constituted "noisy conduct" under K.S.A. 21-6203(a)(3): (1) the specific speech by plaintiff, which was words to the effect of, "I don't give a fuck what you think of me," and "you can fuck off" to Mr. Almon; (2) Plaintiff was in close proximity to Mr. Almon at the time of the speech; (3) the volume and tone of Plaintiff's voice at the time of the speech appeared loud, angry, and confrontational; (4) the fact that Plaintiff was using profane language directed at Mr. Almon; and (5 the fact that Plaintiff was holding a sign attached to a large, wooden stick at the time of his outburst, when Sheriff Armbrister was aware Plaintiff had previously been charged with criminal conduct after separating his sign from the stick, then waiving the stick in a manner that caused individuals to fear bodily harm.**

21. Identify all conduct of Dr. Spiehs on April 20, 2022, that you contend constitutes "noisy conduct" as that phrase is used in K.S.A. 21-6203(a)(3).

**ANSWER: See Defendant's answer to Interrogatory 8, incorporated here by reference.**

22. Did you believe that Dr. Spiehs knew or should have known that saying "I don't give a fuck what you think of me" was prohibited to be said prior to the April 20, 2022, meeting beginning and if your answer is anything but an unqualified "no" identify all facts you contend as to why Dr. Spiehs knew or should have known that phrase was prohibited.

**ANSWER: Sheriff Armbrister does not contend that citizens are categorically prohibited from saying, "I don't give a fuck what you think of me" and therefore does not contend that Plaintiff knew or should have known that phrase, specifically, was prohibited. However, Plaintiff knew or should have known that his conduct, as described in Interrogatory No. 8, incorporated here by reference, would reasonably alarm, anger, or disturb others, based on interpretations of K.S.A. 21-6203 by the Kansas appellate courts.**

23. Is it possible that an individual could say words on April 20,2022, while in the meeting room waiting for the Douglas County Commission meeting to begin that would tend to arouse alarm, anger, or resentment and still not violate K.S.A. 21-6203(a)(3) and if your answer is anything other than an unqualified "no" identify the words and phrases that could be said that would tend to arouse alarm, anger, or resentment and still not violate K.S.A. 21-6203(a)(3).

**ANSWER: Objection. This interrogatory calls for Defendant to create a hypothetical and seeks legal conclusions on matters not relevant to any party's claim or defense. "[I]nterrogatories may not extend to issues of "pure law," i.e., legal issues unrelated to the facts of the case. *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000); *Hirt v. Unified Sch. Dist. No. 287*, 2018 WL 3495845, at *5 (D. Kan. July 20, 2018). Because this interrogatory calls for Defendant's opinion on whether hypothetical facts wholly unrelated to this case would violate K.S.A. 21-6203, it is not a permissible interrogatory and no responses is therefore made. *Se Hirt*, 2018 WL 3495845 at *5 (upholding defense objections to interrogatories calling for hypothetical facts applying to law).**

24. Is there any speech that could be said prior to the April 20, 2022, Commissioner meeting (while in the meeting room) you believe or contend is exempt from the "tending to arouse alarm, anger or resentment in others" language contained in K.S.A. 21-6203(a)(3) and if your answer is anything but an unqualified "no" identify what words and phrases could be said that would tend to arouse alarm, anger, or resentment without violating K.S.A. 21-6203(a)(3).

**ANSWER: Objection. This interrogatory calls for Defendant to create a hypothetical and seeks legal conclusions on matters not relevant to any party's claim or defense. "[I]nterrogatories may not extend to issues of "pure law," i.e., legal issues unrelated to the facts of the case. *Steil v. Humana Kansas City, Inc.*, 197 F.R.D. 445, 447 (D. Kan. 2000); *Hirt v. Unified Sch. Dist. No. 287*, 2018 WL 3495845, at *5 (D. Kan. July 20, 2018). Because this interrogatory calls for Defendant's opinion on whether hypothetical facts wholly unrelated to this case would violate K.S.A. 21-6203, it is not a permissible interrogatory and no responses is therefore made. *Se Hirt*, 2018 WL 3495845 at *5 (upholding defense objections to interrogatories calling for hypothetical facts applying to law).**

Respectfully submitted,

FISHER, PATTERSON, SAYLER & SMITH, L.L.P.

/s/ Andrew D. Holder
Andrew D. Holder, #25456
51 Corporate Woods, Suite 300
9393 West 110th Street
Overland Park, KS 66210
(913) 339-6757 / Fax: (913) 339-6187
aholder@fpsslaw.com
crusso@fpsslaw.com
**ATTORNEYS FOR OFFICER DEFENDANTS**


14

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing pleading on this 17th day of June 2025, by *email* to the following:

Linus L. Baker, #18197
6732 W. 185th Terrace
Stilwell, KS 66085-8922
(913) 486-3913
(913) 232-8734 Fax
linusbaker@prodigy.net
**ATTORNEY FOR PLAINTIFF**

Michelle R. Stewart, #19260
Ashley Jarmer, #24722
HINKLE LAW FIRM, LLC
8711 Penrose Lane, Suite 400
Lenexa, KS 66219-8197
913-345-9205
913-345-4832 Fax
mstewart@hinklaw.com
ajarmer@hinklaw.com
**ATTORNEYS FOR DEFENDANT KAREN WILLEY**

/s/ Andrew D. Holder
Andrew D. Holder, #25456


15

**VERIFICATION**

I, Jay Armbrister, being of legal age, upon oath state that I have read the above and foregoing interrogatories and the answers thereto; that I understand the same; and that, to the best of my knowledge, the answers as stated are true and correct.

Jay Armbrister

STATE OF KANSAS )
) ss
COUNTY OF Douglas )

Subscribed and sworn to before me, a notary public for the State of Kansas, this 16th day of June, 2025.

Notary Public

My Appointment Expires:

November 25, 2027

MICHAEL PATTRICK
My Appointment Expires
November 25, 2027

{00345071}